Edward G. DICKINSON, Plaintiff,

v.

CHRYSLER CORPORATION, a Delaware Corporation, Defendant.

Civ. A. No. 76–71526.

United States District Court, E. D. Michigan, S. D.

March 22, 1978.

**44**

Larry K. Bowerman, Southfield, Mich., for plaintiff.

Catherine M. Thompson, Chrysler Corp., Detroit, Mich., for defendant.

## OPINION

GUY, District Judge.

Plaintiff, Edward G. Dickinson, brought this action pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, *et seq.*, the Michigan Fair Employment Practices Act, M.C.L.A. § 423.301, and Article I, § 2 of the Michigan Revised Constitution. Plaintiff claims employment discrimination on the basis of race and sex. Defendant, Chrysler Corporation, has moved for dismissal of plaintiff's complaint on the ground that the court lacks jurisdiction over the subject matter.

The facts applicable to the motion to dismiss are as follows:

Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging race and sex discrimination. On February 18, 1976, he received his right-to-sue letter from the EEOC. Plaintiff filed the instant complaint in state court on February 26, 1976. Chrysler was served with plaintiff's complaint on July 7, 1976 and removed the action to federal court on July 23, 1976.

In its motion for dismissal, Chrysler contends that plaintiff failed to file suit in federal court within 90 days after receipt of his right-to-sue letter. Chrysler argues that the federal courts have exclusive jurisdiction over Title VII actions and, therefore, that an action brought in state court cannot satisfy the jurisdictional prerequisites of Title VII.

Plaintiff contends jurisdiction over Title VII actions is concurrent in the state and federal courts and, accordingly, plaintiff filed suit within the 90-day period. Alternatively, plaintiff argues that, in the event the court rules there is no concurrent jurisdiction, the principle of equitable tolling, or a doctrine akin thereto, should be invoked to preserve his rights as a result of his filing suit in state court.

The court is presented with two issues: first, whether Title VII vests concurrent jurisdiction over actions filed thereunder in the state and federal courts; and, second, if there is no concurrent jurisdiction, what is the effect on this court's jurisdiction of filing in the state court within the 90-day period.

## A. CONCURRENT OR EXCLUSIVE JURISDICTION

The initial consideration for the court is the question of concurrent jurisdiction. Few courts have rendered opinions on this point. Those that have are not in agreement.[1] No appellate or Supreme Court authority is directly on point.

The grant of jurisdiction over Title VII causes of action to federal courts is set forth at 42 U.S.C. § 2000e–5(f)(3).[2] The statutory language contains no explicit statement that federal court jurisdiction is exclusive. An analysis of the legislative history of Title VII, however, is helpful to a resolution of the concurrent jurisdiction question.

■ Title VII was never intended to be an exclusive remedy for individuals claiming employment discrimination. It was not meant to supplant but rather to supplement existing fair employment practices laws. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1020, 39 L.Ed.2d 147 (1974). When the Senate debated the proposed Civil Rights Act of 1964, Senator Clark, Democratic floor manager for the bill, stated:

> Nothing in title VII or anywhere else in this bill affects rights and obligations under the NLRA and the Railway Labor Act. . . . [T]itle VII is not intended to and does not deny to any individual, rights and remedies which he may pursue under other Federal and State statutes. If a given action should violate both title VII and the National Labor Relations Act, the National Labor Relations Board would not be deprived of jurisdiction. 110 Cong.Rec. 7207 (1964).[3]

Attempts were made by some members of Congress to make Title VII an exclusive employment discrimination remedy. But, in both 1964 and 1971, amendments which would have made Title VII the exclusive federal remedy for most unlawful employment practices were rejected. 110 Cong. Rec. 13650–13652 (1964); H.R. 9247, 92d Cong., 1st Sess. (1971); H.R.Rep.No.92–238 (1971), U.S.Code Cong. & Admin.News 1972, p. 2137.

The legislative history is clear that Congress intended to preserve the already existing remedies available to individuals under other applicable federal and state statutes. This fact is significant because a holding that an additional remedy such as Title VII is exclusively federal does not harm the total scheme of civil rights legislation. An entire panoply of remedies is available to the individual who claims employment discrimination. Such a litigant may choose the statutory or constitutional basis for his action and the forum, either state or federal, in which to proceed. To designate the federal courts as the sole final arbiter is not inconsistent with a recognition of the availability of other forums under other statutes and procedures.

Additionally, the legislative history of Title VII shows considerable debate relative to the relationship between Title VII and state fair employment practices legislation. Some members of Congress believed that Title VII did not give sufficient recognition to state sovereignty in this area.

In order to compromise with those who felt that the role of the states in civil rights

---

1. *See Bennun v. Board of Governors,* 413 F.Supp. 1274 (D.N.J.1976) and *Vason v. Carrano,* 31 Conn.Sup. 338, 330 A.2d 98 (1974) (jurisdiction is concurrent), *Fox v. Eaton Corp.,* 14 FEP 623 (Ohio Sup.Ct.1976) and *Lucas v. Tanner Bros. Contracting Co.,* 10 FEP 1104 (Ariz.Sup.Ct.1974) (Title VII jurisdiction is exclusively federal).

2. Subsection 2000e–5(f)(3) provides in relevant part that:
   (3) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter.

3. *See also* Interpretive Memorandum of Senators Clark and Case, 110 Cong.Rec. 7213 (1964) and the report of the Senate Committee responsible for the 1972 Act which explained that:
   neither the above provisions regarding the individual's right to sue under Title VII, nor any of the other provisions of this bill, are meant to affect existing rights granted under other laws. S.Rep.No.92–415, p. 24 (1971).

enforcement should be kept viable, the deferral language of Section 706(c), 42 U.S.C. § 2000e–5(c),[4] which was not part of the bill when it emerged from the House of Representatives,[5] was introduced in the Senate as a part of the Dirksen-Mansfield-Humphrey-Kuchel substitute to the proposed act. Regarding this amendment, Senator Humphrey commented:

> The most important changes give greater recognition to the role of State and local action against discrimination.
>
> \* \* \* \* \* \*
>
> Provisions have been inserted . . . to give States which have . . . fair employment practices laws . . . a reasonable opportunity to act under State Law before the commencement of any Federal proceedings by individuals who allege discrimination. 110 Cong.Rec. 12707–8 (1964).

Senator Case remarked:

> Clearly, under the mechanics of the bill in the form with which the leadership is concerned, more concern or more deference could not be given to the rights of the States. For example, the Federal agency which would be able to mediate in this connection could not consider taking any action for 2 months, if there were any State machinery at all. The States will be given that much time in which to deal with complaints. Only when the States have no colorable claim to give consideration to such matters, can they be considered by the Federal Government in the time specified; and, of course, that amount of time is to be doubled in the first year. 110 Cong.Rec. 13081 (1964).

And, Senator Dirksen noted:

> [W]ith respect to the enforcement of the title, we undertook to keep primary, exclusive jurisdiction in the hands of the State commissions for a sufficient period of time to let them work out their own problems at the local level. 110 Cong. Rec. 13087 (1964).

The incorporation of Section 706(c) into Title VII established the policy of avoiding federal action whenever possible by making the state a partner in enforcement. *Equal Employment Opportunity Commission v. Wah Chang Albany Corp.*, 499 F.2d 187 (9th Cir. 1974). However, the state administrative procedures alone were incorporated into Title VII with the federal courts remaining as the forum of last resort. Had Congress intended the Title VII litigant to enforce his rights in state court, the entire series of debates relative to the addition of the state administrative remedies would have been meaningless.

It is significant to note that when reference was made by members of Congress to bringing actions in court, the references were to *federal court*. For example, the Interpretive Memorandum of Senate floor managers Clark and Case, in discussing the enforcement procedures, stated:

> If a majority of the Commission determine that reasonable cause exists, ordinarily a suit will be brought in a *Federal district court* in the judicial district in which the unlawful employment practice allegedly occurred or in the judicial district in which the respondent has his principal office. However, the Commission members may, by an affirmative vote, decide not to bring suit in a given case . . . .
>
> If the Commission decides not to sue, or if at any earlier state it terminates the

---

**4.** Section 706(c) provides in relevant part:

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person

aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law . . .

**5.** See remarks of Senator Dirksen, 110 Cong. Rec. 12807, 12814, 12819 (1964).

proceeding for any reason, the party allegedly discriminated against may, with the written permission of one member of the Commission, bring his own suit in *Federal court* . . . .

The suit against the respondent, whether brought by the Commission or by the complaining party, would proceed in the usual manner for litigation in the *Federal courts.* 110 Cong.Rec. 7213 (1964) (emphasis added) [6]

Further, the enacted provisions of Title VII adopt a scheme which looks to federal court enforcement. Several subsections refer to the Federal Rules of Civil Procedure and federal statutes applicable only in federal courts.[7]

Although no United States Supreme Court decision directly addresses the issue of concurrent vs. exclusive jurisdiction, the decision in *Alexander v. Gardner-Denver, supra,* is helpful. There, the Supreme Court specifically used the modifier "feder-

al" when it referred to "courts."[8] In an apparent attempt to exhaustively list the forums in which Title VII matters may be litigated, the Court noted:

Title VII provides for consideration of employer-discrimination claims in several forums. See 42 U.S.C. § 2000e–5(b) (1970 ed., Supp. II) (EEOC); 42 U.S.C. § 2000e–5(c) (1970 ed., Supp. II) (state and local agencies); 42 U.S.C. § 2000e–5(f) (1970 ed., Supp. II) (federal courts). 415 U.S. at 47, 94 S.Ct. at 1019.

It is significant that state courts are not one of the forums which the Court lists. This court believes that these references are evidence of a determination by the Supreme Court that Title VII should be an exclusively federal remedy.

■ This court thus concludes that the legislative history of Title VII and the compelling language of *Alexander v. Gardner-Denver, supra,* dictate that jurisdiction of

**6.** See also remarks of Senator Case, 110 Cong. Rec. 7243 (1964); remarks of Senator Humphrey, 110 Cong.Rec. 12708, 12722 (1964).

**7.** Subsection 42 U.S.C. 2000e–5(f)(2) provides that injunctive relief "shall be issued in accordance with rule 65 of the Federal Rules of Civil Procedure"; 42 U.S.C. 2000e–5(f)(3) provides that 28 U.S.C. §§ 1404 and 1406 govern venue; 42 U.S.C. 2000e–5(f)(4) provides that the Chief Judge of the District Court shall designate the District Judge to hear and determine the case; 42 U.S.C. 2000e–5(f)(5) enables the designated judge to "appoint a master pursuant to rule 53 of the Federal Rules of Civil Procedure"; 42 U.S.C. 2000e–5(j) provides that appeals shall be brought in accordance with 28 U.S.C. §§ 1291 and 1292; 42 U.S.C. 2000e–6(b) enables the Attorney General to "request that a court of three judges be convened to hear and determine the case".

**8.** The Court's references were as follows:

Even in its amended form, however, Title VII does not provide the Commission with direct powers of enforcement. The Commission cannot adjudicate claims or impose administrative sanctions. Rather, final responsibility for enforcement of Title VII is vested with *federal courts.* The Act authorizes courts to issue injunctive relief and to order such affirmative action as may be appropriate to remedy the effects of unlawful employment practices. 42 U.S.C. §§ 2000e–5(f) and (g) (1970 ed., Supp. II). Courts retain these broad remedial powers despite a Commission finding of no reasonable cause to believe that

the Act has been violated. *McDonnell Douglas Corp. v. Green, supra,* 411 U.S., at 798–799, 93 S.Ct., at 1822–23. Taken together, these provisions make plain that *federal courts* have been assigned *plenary* powers to secure compliance with Title VII. 415 U.S. at 44–45, 94 S.Ct. at 1018 (emphasis added) [Title VII] does, however, vest *federal courts* with *plenary* powers to enforce the statutory requirements; and it specifies with precision the jurisdictional prerequisites that an individual must satisfy before he is entitled to institute a lawsuit. 415 U.S. at 47, 94 S.Ct. at 1019 (emphasis added).

This same characteristic, however, makes arbitration a less appropriate forum for final resolution of Title VII issues than the *federal courts.* 415 U.S. at 58, 94 S.Ct. at 1024 (emphasis added).

And, the Court concluded:

We think, therefore, that the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII. The *federal court* should consider the employee's claim *de novo.* The arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate. 415 U.S. at 59–60, 94 S.Ct. at 1025 (emphasis added)

Title VII litigation is exclusively vested in the federal courts.

## B. EFFECT OF FILING IN STATE COURT

Having concluded that there is no concurrent jurisdiction under Title VII, the court must now decide what effect the filing of an action in state court within the 90-day period has on the federal court's jurisdiction of that action.

Plaintiff alleges that, notwithstanding exclusive federal court jurisdiction over Title VII actions, the state court filing tolls the running of the 90 days. Plaintiff relies upon *Burnett v. New York R. Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), as support for his position.

Defendant distinguishes this action from *Burnett* and argues that removal of the action from state court to federal court was a nullity because the state court lacked subject matter jurisdiction of the Title VII claim.

In *Burnett,* plaintiff commenced an action under the Federal Employers' Liability Act (FELA) in an Ohio state court. Because jurisdiction of claims pursuant to the FELA is concurrent in the state and federal courts, the Ohio court was a court of competent jurisdiction. However, venue did not lie under the Ohio law. The Supreme Court held:

> that when a plaintiff begins a timely FELA action in a *state court having jurisdiction,* and serves the defendant with process and plaintiff's case is dismissed [by state court] for improper venue, the FELA limitation is tolled during the pendency of the state suit. 380 U.S. at 434–435, 85 S.Ct. at 1058 (emphasis added).

Unlike the *Burnett* case, plaintiff's complaint was not brought in a "state court having jurisdiction." This distinction is important for the following reason.

■■■ Plaintiff's complaint is before the court because it was removed hereto by defendant. The jurisdiction of the federal court pursuant to the general removal statute, 28 U.S.C. § 1441, is derivative. If the state court lacks jurisdiction of the subject matter, the federal court acquires none. *Lambert Run Coal Co. v. Baltimore & Ohio R. Co.,* 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671 (1922); *Bancohio Corp. v. Fox,* 516 F.2d 29, 31 (6th Cir. 1975).[9] Therefore, the court must dismiss plaintiff's Title VII claim for lack of subject matter jurisdiction pursuant to F.R.C.P. 12(h)(3).

With the dismissal of plaintiff's Title VII claim, there remains no Federal claim which would justify the exercise of pendent jurisdiction over plaintiff's related state claims. The court distinguishes this case from *Bancohio v. Fox, supra,*[10] and finds that plaintiff's complaint sets forth separate federal and state causes of action which, although based on the same facts, are severable. Accordingly, the court dismisses plaintiff's Title VII claim and remands plaintiff's claims under the Michigan Constitution and the state statute to the state court in which this action was originally brought.

**9.** *See also General Investment Co. v. Lake Shore Ry.,* 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244 (1922); *Venner v. Michigan Central R.R. Co.,* 271 U.S. 127, 46 S.Ct. 444, 70 L.Ed. 868 (1926); *Minnesota v. United States,* 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939); *Freeman v. Bee Machine Co., Inc.,* 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943); *Warner Bros. Records, Inc. v. R. A. Ridges Distributing Co.,* 475 F.2d 262 (10th Cir. 1973); *Washington v. American League of Professional Baseball Clubs,* 460 F.2d 654 (9th Cir. 1972); *Federal Savings & Loan Insurance Corp. v. Quinn,* 419 F.2d 1014 (7th Cir. 1969); *Koppers Co. v. Continental Casualty Co., Inc.,* 337 F.2d 499 (8th Cir. 1964); discussions in 1A *Moore's Federal Practice,* ⸰ 0.157[3] at 44, 2 ed. (1975).

**10.** In the *Bancohio* case, the Sixth Circuit dismissed the action *in toto* finding that the state and federal claims were so closely interwoven that their separation was impractical, if not impossible. 516 F.2d at 33.