428 So.2d 688 (1983)
Hughlan LONG, Appellant,
v.
DEPARTMENT OF ADMINISTRATION, DIVISION OF RETIREMENT, Appellee.
No. AL-51.
District Court of Appeal of Florida, First District.
February 8, 1983.
Rehearing Denied April 6, 1983.
*689 Jerold Feuer, Miami, for appellant.
*690 Augustus D. Aikens, Jr., Div. Atty., Div. of Retirement, Tallahassee, for appellee.
PER CURIAM.
Long appeals the final order of the Department of Administration, Division of Retirement, which finds him not eligible for a two percent credit for his past service. Long presents several points on appeal, three of which merit discussion. First, whether Rule 22B-7.05, Fla. Admin. Code, is sexually discriminatory and thereby violates Title VII of the 1964 Civil Rights Act. Second, whether the above rule violates the Florida and Federal Constitutions. Third, whether the State should be equitably estopped from denying Long a two percent credit for past service. We affirm.
Appellant was employed in various state positions prior to 1970. As such, he was a member of the State and County Officer and Employee Retirement System (SCOERS). Prior to his appointment as a Judge of Industrial Claims in 1970, appellant voluntarily transferred from SCOERS to the Florida Retirement System (FRS). Appellant was erroneously advised by letter in 1972 that he would receive a 2% credit for his past service, although at the time he was eligible only for a 1.6% credit. Based on this information, appellant paid a total of $4,092.27 to purchase his 10.18 years of prior service. In 1975, the Division discovered its error and sent appellant a letter advising him that his percentage had been incorrectly computed because he did not have three continuous years of service before transferring to FRS. In 1981, appellant requested data on his retirement credit and was advised he would get a 1.6% credit for his past service. At that time Long filed a request for a hearing pursuant to section 120.57, Fla. Stat. (1981), and the case was assigned to the Division of Administrative Hearings. The prehearing stipulation listed two issues: (1) whether Long was entitled to credit at 2% for his 10.18 years of prior service; and (2) whether the Florida Retirement System is sexually discriminatory. The hearing was held and the Hearing Officer recommended that appellant not be given the 2% credit, but that appellant should have the option of recouping his $4,092.27 along with six percent interest if he chose not to accept the 1.6% past service credit. The recommended order made no mention of the constitutional and statutory sex discrimination issues. The Department of Administration, Division of Retirement then issued the final order which is here appealed. The final order is substantially similar to the Hearing Officer's recommended order, with the exception that it states that the agency is unable to rule on the constitutional claim.
Rule 22B-4.10, Fla. Admin. Code, provides for optional retirement benefits for members of FRS.[1] Option 1 is the maximum *691 retirement benefit payable to the member during his lifetime. Option 3 is a retirement benefit which is payable during the joint lifetime of both the member and a joint annuitant, and which continues after the death of either, during the lifetime of the survivor, in the same amount. Option 4 is a retirement benefit payable during the joint lifetime of the member and a joint annuitant, and which continues after the death of either, during the lifetime of the survivor, in an amount equal to 66 2/3% of the amount which was payable during the joint lifetime of the member and his joint annuitant. Paragraph (2) of Rule 22B-4.10 provides that the benefits payable under Options 3 and 4 shall be the actuarial equivalent of the amount to which the member is *692 entitled under Option 1. It is in determining this actuarial equivalency that appellant contends the rules are sexually discriminatory. Appellant attacks Rule 22B-7.05 which provides the factors to be used to determine the benefits which are payable during the joint lifetime of a male member and a female joint annuitant when the member has elected to receive benefits under Option 3 or 4. These factors take into account the fact that women, as a class, live longer than men. Because women live longer, the actuarial equivalent of the Option 1 benefit is greater for a female member. Therefore, the factors of Rule 22B-7.05 which determine the amount payable to a male member and a female joint annuitant under Options 3 and 4 do not provide for as large a benefit as the factors of Rule 22B-7.06 which determine the amount payable to a female member and a male joint annuitant of the same age and under the same option.[2] Appellant claims that since Options 3 and 4 provide different benefit amounts to male members with female joint annuitants and female members with male joint annuitants of the same age, that Rule 22B-7.05 violates Title VII of the 1964 Civil Rights Act, specifically, 42 U.S.C. section 2000e-2 and also the Federal and Florida Constitutions in that the rule is sexually discriminatory.
Turning first to appellant's statutory claim, we hold that state courts do not have jurisdiction over Title VII claims.[3]Dickinson v. Chrysler Corp., 456 F. Supp. 43 (E.D.Mich. 1978); Fox v. Eaton Corp., 48 Ohio St.2d 236, 358 N.E.2d 536 (Ohio 1976). Therefore, the agency and hearing officer below did not err in ignoring appellant's Title VII claim.
The agency and hearing officer also lacked jurisdiction to hear appellant's *693 constitutional argument. This court, however, can hear the constitutional argument on appeal since the complete record necessary for such a decision was preserved in this case. Rice v. Department of Health and Rehabilitative Services, 386 So.2d 844 (Fla. 1st DCA 1980). We hold that Rule 22B-7.05, Fla. Admin. Code, does not violate the equal protection clause of either the fourteenth amendment of the United States Constitution or article I, section 2 of the Florida Constitution. To pass muster under the equal protection clause of the Federal Constitution, a sexually discriminatory law must bear a fair and substantial relationship to an important governmental objective. Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); Purvis v. State, 377 So.2d 674 (Fla. 1979). Similarly, under the Florida Constitution, any such law must bear a just and reasonable relation to a legitimate purpose. In re Estate of Reed, 354 So.2d 864 (Fla. 1978). The rule in the case at bar distinguishes between men and women based on mortality tables. The important state purpose is to provide for an actuarily sound state retirement system. Since it is an actuarial fact that women as a class live longer than men, the distinction drawn under this rule bears a substantial relationship to the important governmental purpose. Cf. In re Estate of Rincon, 327 So.2d 224 (Fla. 1976); Shevin v. Kahn, 273 So.2d 72 (Fla. 1973), aff'd, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974). Rule 22B-7.05, therefore, does not violate the equal protection provisions of either the Federal or Florida Constitution.
Turning to the estoppel issue, as a general rule, equitable estoppel will be applied against the State only in rare instances and in exceptional circumstances. Another general rule is that the State cannot be estopped through mistaken statements of the law. In order to demonstrate estoppel, the following elements must be shown: (1) a representation as to a material fact that is contrary to a later asserted position; (2) reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel caused by the representation and reliance thereon. State Department of Revenue v. Anderson, 403 So.2d 397 (Fla. 1981). Here, it cannot be said that appellant's change of position has been detrimental since appellant now has the benefit of credit for his past service, albeit at 1.6%. Appellant did not establish that he is in a worse position now than if he had never relied on the erroneous information. Although he is not as well off as he might have been had the erroneous information been correct, appellant has not proven detriment.
AFFIRMED.
ROBERT P. SMITH, Jr., C.J., and SHIVERS and THOMPSON, JJ., concur.
NOTES
[1] The rule states:

22B-4.10 Optional Retirement Benefits.
(1) A member who is eligible for a retirement benefit computed in accordance with Sections 22B-4.04, 22B-4.05, or 22B-4.06 shall elect in the manner prescribed by the Administrator, prior to the receipt of his first monthly retirement payment, to receive the retirement benefits for which he is eligible in accordance with one of the following options:
(a) Option 1. The maximum retirement benefit payable to the member during his lifetime.
(b) Option 2. A retirement benefit payable during his lifetime and, in the event of his death within a period of 10 years after his retirement, the same monthly amount to be payable to his beneficiary for the balance of such 10-year period.
(c) Option 3. A retirement benefit which shall be payable during the joint lifetime of both the member and his joint annuitant and which shall continue after the death of either during the lifetime of the survivor in the same amount.
(d) Option 4. A retirement benefit payable during the joint lifetime of the member and his joint annuitant, and which shall continue after the death of either during the lifetime of the survivor in an amount equal to 66 2/3 percent of the amount which was payable during the joint lifetime of the member and his joint annuitant.
(2) The benefits payable under Option 1 in this section shall be the amounts computed in Sections 22B-4.04, 22B-4.05, or 22B-4.06. The benefits payable under Options 2, 3, and 4 in this section shall be the actuarial equivalent of the amount to which the member is otherwise entitled under Option 1, based on the actuarial tables included in Chapter 22B-7.
(3) The benefits payable under Option 2 shall be calculated as follows:
(a) Determine the maximum retirement benefit the member is eligible for under Option 1.
(b) Select the appropriate Option 2 factor from Section 22B-7.04, using the member's sex and age at date of retirement.
(c) Multiply the maximum retirement benefit obtained in (a) above by the actuarial factor obtained in (b) above to determine the benefit which the member shall receive.
(d) In the event of death of the recipient of an Option 2 benefit when an estate is the beneficiary, the estate may request a lump sum settlement of any monthly benefit payments remaining of the ten year payment period. The lump sum shall represent the present value of the remaining unpaid installments adjusted for the time value of money. The executor, administrator or personal representative of the estate shall sign a release acknowledging payment of any claim against the retirement trust fund.
(4) The benefits payable under Options 3 and 4 shall be calculated as follows:
(a) Determine the maximum retirement benefit the member is eligible for under Option 1.
(b) Depending on the member's sex and the joint annuitant's sex, turn to Section 22B-7.05, 22B-7.06, 22B-7.07, or 22B-7.08, whichever is applicable.
(c) Using the member's age and the joint annuitant's age at date of retirement, select the actuarial factor listed for the option selected by the member. The following exception exists, however, for any member who continues employment with a covered employer after becoming eligible to retire with an Option 1 benefit equal to 100% of his A.F.C. When the member retires, the actuarial factor shall be determined by the age of the member and that of his joint annuitant at the time the member became eligible for the benefit equal to 100% of his A.F.C.
(d) Multiply the maximum retirement benefit obtained in (a) above by the actuarial factor obtained in (c) above to determine the benefit which the member shall receive.
(5) A member shall select an option for receiving benefits and may select a different option prior to the time the first benefit check has been cashed or deposited. Thereafter, the member shall not be permitted to change the option he selected, except as provided in Section 22B-4.10(7).
(6) The election of an option shall be null and void if either the member, designated beneficiary, or designated joint annuitant should die before the effective date of retirement, which shall be the first day of the month during which benefits commence, as provided in Section 22B-4.02(3). If a member should die prior to his effective date of retirement, his employment will be considered to have been terminated by death, (even if the death occurred after his last day of employment), and benefits shall be payable in accordance with the provisions of Section 22B-4.08. If the member should die after his effective date of retirement, his employment will be considered to have been terminated by retirement, and benefits shall be payable in accordance with the retirement option selected as provided by this section, except when death occurs prior to the cashing or depositing of the first retirement benefit warrant by the member, and the surviving spouse or other dependent is the designated beneficiary or joint annuitant, in which case benefits shall be payable in accordance with the provisions of Section 22B-4.08.
(7) On or after October 1, 1979, a member who elects Option 3 or 4 shall, on a form provided for that purpose, designate his spouse or other dependent to receive the benefits which continue to be payable upon his death. If, after benefits have commenced under Option 3 or 4, the retired member desired to change his designation of a joint annuitant, he may do so only if his first designated joint annuitant is alive and can show evidence of good health as shall be substantiated by a statement from a physician licensed in this state. A member desiring to change his designation of a joint annuitant shall file with the Division a notarized "Change of Joint Annuitant" form. Upon receipt of a complete "Change of Joint Annuitant" form the Division shall adjust the member's monthly benefit by the application of actuarial tables and calculations developed to ensure that the benefit paid is the actuarial equivalent of the benefit to which the member was otherwise entitled under Option 1, taking into consideration the benefits that have already been paid at the time the member elects to change his designation of a joint annuitant. The consent of a retired member's first designated joint annuitant to any such change shall not be required. The effective date of the change will be the first day of the month following receipt of the "Change of Joint Annuitant" form by the Division.
[2] Rule 22B-7.05 provides in part:

Factors for Calculating Benefits Provided by Options 3 and 4 for a Male Member and Female Joint Annuitant.
Factors in this section are used to determine the benefits which are payable during the joint lifetime of a male member and female joint annuitant when the member has elected to receive benefits under Option 3 or Option 4 in Section 22B-4.10(1)(c) or (d). The appropriate factor is determined by the member's age and the joint annuitant's age at date of retirement, and the option selected by the member.
OPTION 3 & OPTION 4 FACTORS

MEMBER SEX: JOINT
MALE ANNUITANT
 SEX
 FEMALE
MEMBER JOINT OPTION OPTION 4
AGE ANNUITANT 3 66 2/3%
 AGE 100%
 50 15 .67462 .75768
 50 16 .67687 .75962
 50 17 .67921 .76165
 50 18 .68164 .76376
 50 19 .68417 .76595
 50 20 .68681 .76824
 50 21 .68955 .77061
 50 22 .69241 .77309
 50 23 .69538 .77567
 50 24 .69848 .77835

....
Rule 22B-7.06 provides in part:
Factors for Calculating Benefits Provided by Options 3 and 4 for a Female Member and Male Joint Annuitant.
Factors in this section are used to determine the benefits which are payable during the joint lifetime of a female member and male joint annuitant when the member has elected to receive benefits under Option 3 or 4 in Section 22B-4.10(1)(c) or (d). The appropriate factor is determined by the member's age and the joint annuitant's age at date of retirement, and the option selected by the member.
OPTION 3 & OPTION 4 FACTORS

MEMBER SEX: JOINT
FEMALE ANNUITANT
 SEX:
 MALE
MEMBER JOINT OPTION OPTION 4
AGE ANNUITANT 3 66 2/3%
 AGE 100%
 50 15 .77720 .84217
 50 16 .78030 .84477
 50 17 .78350 .84747
 50 18 .78682 .85027
 50 19 .79025 .85319
 50 20 .79380 .85621
 50 21 .79716 .85936
 50 22 .80123 .86262
 50 23 .80512 .86601
 50 24 .80913 .86952

[3] This question has not been settled by the federal courts. Compare Greene v. County School Board of Henrico County, Virginia, 524 F. Supp. 43 (E.D.Va. 1981) (holding that federal courts do not have exclusive jurisdiction under Title VII) with Dickinson v. Chrysler Corp., 456 F. Supp. 43 (E.D.Mich. 1978) (holding that federal courts have exclusive jurisdiction of Title VII claims). We think that the better reasoning, supported by legislative history as discussed in Dickinson, is that the federal courts have exclusive jurisdiction of Title VII claims.