805 F.2d 1542
 42 Fair Empl.Prac.Cas. 1058,
42 Empl. Prac. Dec. P 36,709, 55 USLW 2384,
7 Employee Benefits Ca 2648,
8 Employee Benefits Ca 1568
 Hughlan LONG and S. Dewey Haas, individually and on behalf
of all retired and present employees subject to the Florida
Retirement System established by Chapter 121, Florida
Statutes, and all joint annuitants thereunder, Plaintiffs-
Appellees, Cross-Appellants,
v.
The STATE OF FLORIDA, a governmental body, and the Honorable
Robert Graham, as Governor of the State of
Florida, Defendants-Appellants, Cross-Appellees.
 Nos. 86-3282, 86-3410.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 19, 1986.
Opinion on Denial of Rehearing Feb. 19, 1987.
 
 Mang & Stowell, Douglas A. Mang, Charles T. Collette, Gary J. Anton, Augustus Aikens, Jr., General Counsel, Dept. of Admin., Tallahassee, Fla., for defendants-appellants, cross-appellees.
 Jerold Feuer, Ruden, Barnett, McClosky, Schuster & Russell, Woodrow M. Melvin, Jr., Cindy Niad-Hannah, Keith Olin, David Popper, Popper and Popper, Miami, Fla., for plaintiffs-appellees, cross-appellants.
 David V. Kerns, pro se.
 McGuiness & Williams, Robert E. Williams, Douglas S. McDowell, Garen E. Dodge, Washington, D.C., amici curiae.
 Appeals from the United States District Court for the Northern District of Florida.
 Before GODBOLD and FAY, Circuit Judges, and ATKINS*, Senior District Judge.
 GODBOLD, Circuit Judge:
 
 
 1
 Plaintiffs brought this class action under Title VII of the Civil Rights Act of 1964 against the Florida Retirement System ("FRS") for sex discrimination in the administration of its pension plans. Plaintiff class consists of two subclasses: subclass A includes retired male employees who retired after March 24, 1972 and before August 1, 1983 and who elected to receive their pension benefits under one of the three joint-annuitant options of the FRS, and subclass B includes males presently employed by the FRS who are vested in the system because of ten years of service but who have not yet retired.
 
 
 2
 On cross-motions for summary judgment the district court found for plaintiff class because the Supreme Court's decision in Los Angeles Dept. of Water & Power v. Manhart, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978) put the FRS on notice that it could not rely on sex-distinct mortality tables to determine optional benefits, and, therefore, the FRS violated Title VII by offering pension plans that discriminated against males. The district court reserved ruling on damages until it could conduct an evidentiary hearing on the impact of such damages. After a four-day hearing, the district court concluded that all members of subclass A were entitled to prospective "topping up"[1] of their monthly retirement benefits to Florida's current unisex level[2] commencing on April 30, 1986,[3] which would cost the state approximately $32.3 million. The district court further found that all retirees of subclass A who retired after October 1, 1978 were entitled to retroactive topping up from that date to April 30, 1986, which would cost the state approximately $11.3 million. We affirm.
 
 I. Factual Background
 
 3
 The FRS has operated a defined benefit pension plan[4] since 1970. The system serves over 1,100 Florida local governments as well as the state, its agencies, and the state university system. Since its inception the FRS has offered four retirement plans: its primary, single-life plan and three joint-annuitant, optional plans. Under Option 1, the primary benefit plan, a retiree receives a percentage of his average high salary for the past five years. This percentage is based on his number of years of service. If a retiree wants his pension benefits to continue through his spouse's or another beneficiary's life, then he can choose one of the three optional, joint-annuitant plans. Option 2 is a joint and survivorship option payable for a fixed period of ten years. Option 3 is a joint-annuitant option payable for the joint lives of the retiree and his beneficiary. Option 4 is a joint-annuitant option payable to the retiree and his beneficiary for their joint lives but which, upon the death of either, reduces by one third the monthly benefits payable to the remaining life. Fla.Stat.Ann. Sec. 121.091(6) (1982 & Supp.1986). Until August 1, 1983 the FRS based the joint annuities under these options on sex-distinct mortality tables, which resulted in lower monthly benefits to male retirees. For all employees retiring on or after August 1, 1983, the FRS now bases the joint annuities on sex-neutral mortality tables.
 
 
 4
 Since the creation of the FRS similarly situated males and females have contributed the same amounts and received the same primary benefits under Option 1. From 1970 to 1975 the FRS was funded by contributions from both employees and employers. Since 1975 the system has been funded exclusively by employer contributions, except for elected state officers. Because the employers are state and local governments and agencies, employer contributions come from public funds. All contributions to the system, except those for elected state officers, are based on a percentage of the gross compensation of participating employees. Id. Sec. 121.071. Upon retirement an employee's right to a certain level of benefits under the system vests, and the system cannot reduce the retiree's benefits in the future. The FRS also must collect enough contributions to maintain the system "on a sound actuarial basis," which includes funding for current and projected operating expenses and funding to eliminate over time the unfunded accrued actuarial liability. Fla. Const. art. X, Sec. 14. The Florida legislature can increase or reduce the contribution rates as needed for the FRS to fulfill its obligations. See Fla.Stat.Ann. Sec. 121.061.
 
 II. Preliminary Issues
 
 5
 The FRS raises several issues regarding the class, its claims, and the proper defendants. First, the FRS argues that plaintiff Long's claim against the system must be dismissed because it is barred by collateral estoppel (issue preclusion) or res judicata (claim preclusion) based on Long v. Department of Admin., 428 So.2d 688 (Fla.Dist.Ct.App.1983). This argument is without merit. The Long court held that the FRS's use of sex-distinct mortality tables did not violate the equal protection clauses of the federal and Florida constitutions. Id. at 643. There is no collateral estoppel because the Florida court did not rule on Long's Title VII claim and Long did not assert a claim under Florida's employment discrimination statute, which is substantially similar to Title VII. School Bd. of Leon County v. Hargis, 400 So.2d 103, 108 n. 2 (Fla.Dist.Ct.App.1981). There is no res judicata because Long could not have brought his Title VII action in state court, and the fact that he could have asserted a similar state employment discrimination claim in the original administrative hearing or its subsequent appeal does not bar a later Title VII claim. Cf. Thomson v. Petherbridge, 472 So.2d 773, 775 (Fla.Dist.Ct.App.1985); Pumo v. Pumo, 405 So.2d 224, 226 (Fla.Dist.Ct.App.1981), petition for review denied, 412 So.2d 469 (Fla.1982).
 
 
 6
 Second, the FRS asserts that the certified class is improper because neither plaintiff Samaha's EEOC charge of December 27, 1979 nor plaintiff Rassler's EEOC charge of May 5, 1979 provided the system with adequate notice as required by Title VII. The FRS claims, therefore, that only plaintiff Long's EEOC charge of October 7, 1981, if not barred by collateral estoppel or res judicata, or plaintiff Rassler's amended EEOC charge of August 24, 1981, can be used to establish a cut-off date for class membership, which would include only those employees who retired within 300 days of the EEOC charge. Under Title VII the discriminatory event against each employee must take place within the requisite time frame before such an employee can be included in the class. Payne v. Travenol Laboratories, Inc., 673 F.2d 798, 813 (5th Cir.), cert. denied, 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982). The discriminatory event here is not the date of retirement for each employee, as the FRS contends; rather, each month's disparate retirement check constitutes a separate actionable discriminatory event and therefore a continuing violation. See Bazemore v. Friday, --- U.S. ----, 106 S.Ct. 3000, 3006, 92 L.Ed.2d 315 (1986); Perez v. Laredo Junior College, 706 F.2d 731, 733-34 (5th Cir.1983), cert. denied, 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984). As a result every retiree who received retirement benefits within 300 days of any of the EEOC charges is properly within the class.
 
 
 7
 Third, the FRS contends that the district court erred in failing to dismiss the individually named defendants, Robert Graham, Gilda Lambert, and Andrew McMullian, III,[5] because they were neither named as respondents nor mentioned in any of the plaintiffs' EEOC charges. This argument is also without merit. These defendants were sued in their official capacities only. Although the EEOC charges failed to name these defendants specifically, they had notice of the charges through their official roles as chief executives of the affected state agencies and departments. Fla.Stat.Ann. Secs. 20.04(3)(a), .31(1), .31(2)(c) (Supp.1986). The district court did not err in refusing to dismiss these defendants because they were within "the scope of the EEOC investigation which could reasonably grow out of the administrative charge[s]." Terrell v. United States Pipe & Foundry Co., 644 F.2d 1112, 1123 (5th Cir. Unit B 1981); see also Hamm v. Members of the Bd. of Regents of the State of Florida, 708 F.2d 647, 650 (11th Cir.1983); Tillman v. City of Boaz, 548 F.2d 592, 594 (5th Cir.1977).
 
 III. Substantive Issues
 A. Notice
 
 8
 The district court held that the FRS was on notice that it had to base its optional benefits on sex-neutral tables as of the Supreme Court's decision in Los Angeles Dept. of Water & Power v. Manhart, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978). In reaching this conclusion the district court expressly rejected the system's argument that the law was unsettled regarding pension fund responsibilities for optional pension plans until the Supreme Court's decision in Arizona Governing Comm. for Tax Deferred Annuity & Deferred Compensation Plans v. Norris, 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983). We agree.[6]
 
 
 9
 In Manhart the Supreme Court held that it was illegal for an employer to require female employees to pay higher contributions to an employee pension plan than similarly situated males in order to receive the same benefits at retirement, even if these payments were based on actuarially valid mortality tables for males and females which reflect the fact that, as a class, women live longer than men. Manhart, 435 U.S. at 708-09, 98 S.Ct. at 1375. The Court reasoned that Title VII focuses on fairness to the individual rather than to classes of individuals. Id. at 709, 98 S.Ct. at 1375. Under the plan at issue in Manhart, all females had to pay higher contributions to the pension plan, even though individual females might live longer than similarly situated males. Consequently, while these females were working, they "received smaller paychecks because of their sex, but they will receive no compensating advantage when they retire." Id. at 708, 98 S.Ct. at 1375.
 
 
 10
 The Supreme Court carved out a limited exception to its ruling by holding that it would not "be unlawful for an employer to set aside equal retirement contributions for each employee and let each retiree purchase the largest benefit which his or her accumulated contributions could command in the open market." Id. at 717-18, 98 S.Ct. at 1379-80.
 
 
 11
 In Norris the Supreme Court reexamined the Manhart "open market" exception. In Norris the state employer applied sex-neutral mortality tables to its primary, single-life retirement benefits, as required by Manhart. The employer also offered an optional deferred compensation plan. After inviting private insurance companies to submit bids outlining the investment opportunities that they might offer state employees, the employer selected several of these companies to participate in its optional plans. Although an employee was free to choose among the different insurance companies, they offered essentially the same retirement plans, one of which resulted in lower monthly retirement benefits to male retirees. The Supreme Court held, in a plurality opinion, that because an employer would have violated Title VII if it had offered the annuity option based on sex-distinct mortality tables itself, it violated Title VII when it offered such an option through insurance companies it had selected. Id. 463 U.S. at 1089, 103 S.Ct. at 3501.
 
 
 12
 Although its optional pension plans were clearly impermissible under Norris, the FRS argues that it reasonably relied on the Manhart open market exception until the Norris decision and offered as options in its pension plans annuities that reflected annuities available on the open market. The system relies primarily on the Ninth Circuit's decision in Probe v. State Teachers' Retirement System, 780 F.2d 776, 782-83 (9th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986), which reached this conclusion under similar facts. The district court found that Probe was wrong as a matter of law. We agree.
 
 
 13
 First, although Manhart only addressed contributions to a pension plan, its reasoning applies equally to benefits paid out under a pension plan. Second, and most important, the open market exception applies exclusively to third parties, and, therefore, a reasonable employer knew or should have known that its own optional annuity plans based on sex-distinct mortality tables were impermissible under Title VII. The Supreme Court created the open market exception in Manhart because "Title VII ... primarily govern[s] relations between employees and their employer, not between employees and third parties." Manhart, 435 U.S. at 718 n. 33, 98 S.Ct. at 1380 n. 33. As Justice O'Connor later explained in Norris, whether the Court believed that the insurance industry should use sex-neutral mortality tables was irrelevant; the decision was up to Congress, which had chosen to limit the scope of Title VII to employers and employees. Norris, 463 U.S. at 1107, 103 S.Ct. at 3511 (O'Connor, J., concurring). No matter how the FRS describes its optional pension plans, the end result is that the system, as an employer, offered pension plans based on sex-distinct mortality tables, which was expressly prohibited by the Supreme Court in Manhart.
 
 B. Prospective relief
 
 14
 The district court properly ordered the topping up of benefits for all subclass A retirees as of the date of judgment. The FRS cannot continue to discriminate against plaintiff class. The system argues, however, that the prospective relief ordered here really constitutes retroactive relief and is therefore subject to the restrictions on retroactive awards announced by the Supreme Court in Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). This argument has no merit in this case.
 
 
 15
 "When a court directs a change in benefits based on contributions made before the court's order, the court is awarding relief that is fundamentally retroactive in nature." Norris, 463 U.S. at 1092, 103 S.Ct. at 3501 (Marshall, J., concurring in part). This result is true because to the extent that a retirement plan represents a return on contributions made during the employee's working years that were intended to fund completely the benefits which that employee would receive in the future, any additional relief would have to come from an outside source. The Supreme Court struggled with this issue in Norris and ultimately concluded that topping up of retirees' benefits as of the date of judgment was impermissible where the court had already determined that retroactive relief was inappropriate. Id. at 1105-07, 103 S.Ct. at 3510-11 (Powell, J., dissenting in part and concurring in part); id. at 1111, 103 S.Ct. at 3513 (O'Connor, J., concurring).
 
 
 16
 The Second Circuit considered this problem in Spirt v. Teacher's Ins. & Annuity Assoc., 735 F.2d 23 (2d Cir.), cert. denied, 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984). The Second Circuit recognized that prospective topping up was actually retroactive relief when such an award would affect a portion of benefits attributable to contributions made prior to the date of judgment. Id. at 26. The court concluded, however, that such concepts of retroactivity did not apply under the facts before it because the retirement plan in question did not guarantee certain benefits upon retirement. Thus, the court reasoned, the benefits were not based on the amount of contributions made on behalf of each employee, and any topping up would not constitute retroactive relief. Id. at 26-27.
 
 
 17
 This same reasoning applies to the FRS plans. Almost all contributions made to the system since 1975 were made by employers using public funds. Such contributions were not made on behalf of individual employees. Rather the legislature set the employer contribution rates to cover current and future operating expenses and funding for the system's unfunded accrued actuarial liability. Consequently the benefits paid out of the fund were not directly based on the contributions paid into the fund. The district court's order to top up benefits for all subclass A retirees as of the date of judgment therefore constitutes prospective relief and is clearly permissible.
 
 C. Retroactive relief
 
 18
 The district court awarded retroactive benefits to all subclass A retirees who retired after October 1, 1978.[7] The district court declined to award retroactive benefits to subclass A retirees who retired prior to October 1, 1978. We agree.
 
 
 19
 The Supreme Court has said that in a Title VII case, "given a finding of unlawful discrimination, back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." Albemarle Paper Co. v. Moody, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). The Supreme Court refused to award retroactive damages in both Manhart and Norris. The Court relied on the equitable considerations announced by the Court in Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971): (1) whether the decision "establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed"; (2) "whether retrospective operation will further or retard [the statute's] operation"; and (3) whether the decision would "produce substantial inequitable results if applied retroactively." Id. at 106-07, 92 S.Ct. at 355 (citations omitted); see also Norris, 463 U.S. at 1106-07, 103 S.Ct. 3510-11 (Powell, J., dissenting in part and concurring in part); id. at 1109-10 (O'Connor, J., concurring); Manhart, 435 U.S. at 720-21, 98 S.Ct. at 1381-82.
 
 
 20
 In Manhart the Supreme Court recognized that "pension administrators could reasonably have thought it unfair--or even illegal--to make male employees shoulder more than their 'actuarial share' of the pension burden." Manhart, 435 U.S. at 720, 98 S.Ct. at 1381. Administrators had no reason to expect that the Court would prohibit pension funds from relying on actuarially sound sex-distinct mortality tables and did not need the threat of a backpay award to cause them to amend their practices to conform to the new rule. Id. at 721, 98 S.Ct. at 1382. Furthermore, the award of retroactive damages would have a potentially devastating effect on the insurance and pension industry, most of whom offered annuities based on sex-distinct mortality tables. Id. The Court, therefore, refused to award the plaintiffs retroactive relief.
 
 
 21
 In Norris the Supreme Court similarly refused to award retroactive relief. Justice Powell explained that employers could reasonably have relied on the Manhart open market exception to offer annuities in its pension fund like those offered by insurance companies on the open market. Norris, 463 U.S. at 1106, 103 S.Ct. at 3510 (Powell, J., dissenting in part and concurring in part). Moreover, "holding employers liable retroactively would have devastating results." Id. Justice O'Connor agreed that the decision should only be applied prospectively. She recognized that the employer's reliance on the open market exception was reasonable. She further noted that a retroactive award would not further the operation of Title VII and would likely impose inequitable results. Id. at 1109-10, 103 S.Ct. at 3512 (O'Connor, J., concurring).
 
 
 22
 Before applying the equitable considerations to the facts here, we must consider whether the FRS acted in bad faith. In Albemarle, the Supreme Court held that equity does not come into play where the employer acted in bad faith. Albemarle, 422 U.S. at 422-23, 95 S.Ct. at 2373-74. An employer acts in bad faith "by maintaining a practice which he knew to be illegal or of highly questionable legality." Id. at 422, 95 S.Ct. at 2373. Plaintiff class argues that because the district court found that Manhart provided adequate notice and the system had actual notice from internal memoranda and discussions, a finding of bad faith is compelled as a matter of law, and an award of back benefits is required.
 
 
 23
 Even though the district court's finding of lack of bad faith may constitute an ultimate fact, it is not a conclusion of law, and the district court's finding is subject to the clearly erroneous standard of review. See Pullman-Standard v. Swint, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); Matthews v. United States, 713 F.2d 677, 681 (11th Cir.1983). Given the district court's findings that the FRS administrators reasonably relied on the advice of David Kerns, general counsel for the Florida Department of Administration, and Nevin Smith, then secretary of the Department of Administration, that Manhart did not affect their optional annuity plans, a finding of lack of bad faith is not clearly erroneous. Cf. International Food & Beverage Systems v. Fort Lauderdale, 794 F.2d 1520, 1526 (11th Cir.1986) ("[B]ad faith ... is not lightly imputed to public officials: proof of bad faith must be 'irrefragible,' i.e. pretty strong and assimilated with a specific intent to inflict injury.").
 
 
 24
 Applying the equitable consideration here, the district court properly concluded that the FRS was liable for benefits not paid to subclass A retirees as of October 1, 1978. First, the system knew or should have known since the Supreme Court's decision in Manhart that any benefits based on sex-distinct mortality tables was impermissible under Title VII. Second, the award of retroactive relief would not "retard the operation" or "frustrate the purpose" of Title VII. The system's argument that retroactive relief is not needed to encourage it and other employers to follow this "new" interpretation of Title VII is unpersuasive. Third, although the impact on pension funds and innocent third parties may be burdensome, it will not be devastating.
 
 
 25
 The district court found that the Florida legislature increased the system's contribution rates in 1984, creating a surplus in the fund of over $200 million. This finding of fact, based primarily on the testimony of the FRS consulting actuary, is supported by sufficient evidence and is not clearly erroneous. As a result the impact on Florida taxpayers is not great. The district court's refusal to consider evidence of the impact on pension funds on the national level was also not in error. Manhart put all pension funds on notice that benefits could not be based on sex-distinct mortality tables; all funds, like the FRS, were forewarned and should have converted to sex-neutral mortality tables at that time. The impact on those pension funds that failed to follow the law after Manhart should not be considered here.
 
 
 26
 For these reasons the district court's order topping up benefits with interest from October 1, 1978 to the date of judgment for all subclass A retirees who retired after October 1, 1978 is correct. The same reasoning, however, does not apply to subclass A retirees who retired before October 1, 1978. The Manhart decision put all pension plans on notice that they could no longer offer pension plans based on sex-distinct mortality tables. The Manhart court, however, refused to apply its ruling retroactively to employees who retired prior to the date of judgment because a pension fund was not on notice then that such laws violated Title VII. It would be inconsistent now to apply this court's ruling retroactively to employees who were not affected by the Manhart decision itself.
 
 D. Topping up under the unisex method
 
 27
 The district court properly ordered the retroactive and prospective topping up of benefits under the unisex method of calculation. Under this method male benefits are raised to that level which males would have received had sex-neutral mortality tables been applied to their original benefits. Plaintiff class argues that if this method of topping up is adopted, members of subclass A will continue to receive smaller pension benefits than equally situated females who retired prior to August 1, 1983. This is true because these female retirees have a vested right to the same level of benefits they received under the sex-distinct mortality tables, which are higher than the benefits they would have received under the unisex method. Plaintiff class argues, therefore, that only by topping up benefits for male retirees and their female beneficiaries to the level of benefits for females who retired prior to August 1, 1983 can the court make the parties equal.
 
 
 28
 Plaintiff class misconstrues the purpose of Title VII. Title VII does not require equalization; it only requires that plaintiffs be made whole. "The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." Albemarle, 422 U.S. at 418-19, 95 S.Ct. at 2372 (quoting Wicker v. Hoppsek, 73 U.S. (6 Wall.) 94, 99, 18 L.Ed. 752 (1867)). The district court, therefore, was correct in ordering relief under the unisex method of calculation.
 
 E. Proration
 
 29
 The district court properly refused to prorate its awards of retroactive and prospective relief. The FRS contends that if any relief is granted it should be prorated to the percentage of the benefits not based on previous contributions by or on behalf of the individual employees. Although the district court considered testimony by the system's consulting actuary regarding the mechanics of proration, the district court refused to prorate the award. As mentioned above, benefits in the FRS are not based on individual contributions for individual employees. Instead the legislature sets a contribution rate for the employer based on the pension plan's financial needs. The Florida legislature has the power and responsibility to increase the contribution rates periodically to cover operating costs and the unfunded accrued actuarial liability. Therefore, benefits are not based on contributions previously made into the system and proration is inappropriate.
 
 IV. Conclusion
 
 30
 The FRS was on notice as of the Supreme Court's decision in Manhart that it had to base its optional pension benefits on sex-neutral mortality tables. The district court, therefore, properly ordered the topping up of all subclass A retirees' benefits to the level they would have received had the FRS relied on sex-neutral tables. The district court's further award of retroactive topping up to all subclass A retirees who retired after October 1, 1978 is also correct.
 
 
 31
 AFFIRMED.
 
 ON PETITION FOR REHEARING
 PER CURIAM:
 
 32
 On the issue of bad faith, the petition for rehearing correctly notes that the district court did not find that the Florida Retirement System advisors "reasonably relied" on the advice of the general counsel, and the secretary of the Florida Department of Administration. P. 1549-50. This does not change our conclusion that the district court did not err in finding defendants were not guilty of bad faith and does not compel this court to find bad faith as a matter of law. The district court did find that the defendants' policy was 'a product of poor judgment" but that "[n]one of the principals involved in the decision-making harbored any evil intent or design.' Rather they refused to act based on a "misplaced assumption that there would be no retroactive damage award." These subsidiary findings do not require a conclusion of bad faith.
 
 
 33
 The petition for rehearing is DENIED.
 
 
 
 *
 Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 By ordering the topping up of benefits, a court requires the defendant to pay the plaintiffs the difference between the benefits they actually received and the benefits they would have received had the defendant relied on the proper mortality tables
 
 
 [2]
 Under unisex, or sex-neutral, mortality tables annuities are based on the average life expectancies of male and female employees. This results in higher benefits to male employees and lower benefits to female employees than provided under sex-distinct mortality tables. The FRS voluntarily switched to unisex mortality tables for all employees retiring after August 1, 1983
 
 
 [3]
 The district court ruled that the date of judgment, for purposes of damages, was April 30, 1986. The parties do not dispute this date as the proper date for setting damages. The actual date of the final judgment and order was May 29, 1986
 
 
 [4]
 In a defined benefit pension plan the employer or pension fund guarantees a certain level of benefits to retirees regardless of whether the contributions collected adequately cover the benefits
 
 
 [5]
 Robert Graham is the Governor of Florida; Gilda Lambert is the secretary of the Florida Department of Administration; and Andrew McMullian, III, is the director of the Division of Retirement within the Florida Department of Administration
 
 
 [6]
 Plaintiff class argues that the district court's finding that the FRS was on notice that it had to base its optional pension plans on sex-neutral mortality tables as of 1978 was a finding of fact subject to the clearly erroneous standard of review. Although the district court considered evidence regarding whether the system administrators actually knew that their optional pension plans violated Title VII, the district court's decision ultimately turned on whether the language of the Manhart decision put a reasonable employer on notice that it must convert to sex-neutral mortality tables. Therefore, the district court's finding that the FRS was on notice as of the Supreme Court's 1978 decision in Manhart is a question of law subject to review under the error of law standard
 
 
 [7]
 Although the Supreme Court decided Manhart on May 1, 1978, the district court ruled that the FRS was liable to plaintiff class for retroactive damages only as of October 1, 1978. The district court explained that a pension plan needed a reasonable amount of time within which to change the plan and comply with the new Manhart rule. Neither party challenges this date as the date by which a pension fund must comply with Manhart