852 F.2d 932
 47 Fair Empl.Prac.Cas. 607,
47 Empl. Prac. Dec. P 38,144
Deanna L. BROWN, Plaintiff-Appellant,
v.
RELIABLE SHEET METAL WORKS, INC., Commonwealth Edison
Company, and Russell Irish, Defendants-Appellees.
 No. 87-2066.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 8, 1987.
Decided July 18, 1988.
 
 Michael K. Havrilesko, Williams & McCarthy, Rockford, Ill., for plaintiff-appellant.
 Janice Loughlin, Phelan, Pope & John, Diana C. White, Jenner & Block, Chicago, Ill., for defendants-appellees.
 Before BAUER, Chief Judge, and COFFEY, and KANNE, Circuit Judges.
 BAUER, Chief Judge.
 
 
 1
 Deanna L. Brown filed a Title VII sex-discrimination action in the district court on August 11, 1986. The court dismissed the suit as untimely. We affirm.
 
 I.
 
 2
 While employed by Reliable Sheet Metal Works, Inc. at Commonwealth Edison's Byron Nuclear Power Plant, Brown claims that she was subjected to numerous sexual advances by her supervisor, Russell Irish. Brown alleges that Irish fired her after she rejected his unwelcome advances and threatened to report such conduct to his superiors. Reliable was a sheet-metal contractor at Edison's Byron Plant during its construction.
 
 
 3
 On March 7, 1985, Brown filed a sex-discrimination charge against Reliable, Edison, and Irish with both the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"). Brown later withdrew her charge from the IDHR, but requested that the EEOC issue a right-to-sue letter, which it did on July 30, 1985. Brown's attorney received the letter on August 8, 1985. See Jones v. Madison Service Corp., 744 F.2d 1309, 1312 (7th Cir.1984) (limitations period begins to run on date that claimant or her attorney receives the right-to-sue letter). Pursuant to Section 706 of Title VII, the letter instructed Brown that if she intended to sue the respondents named in her charge, such suit must be filed in the appropriate United States District Court within ninety days of receipt of the letter. 42 U.S.C. Sec. 2000e-5(f)(1).
 
 
 4
 Rather than filing in the United States District Court, Brown filed a civil rights complaint on October 28, 1985 in the Circuit Court of Cook County naming Irish, Reliable, and Edison as defendants. Brown's complaint alleged sexual harassment and wrongful discharge in violation of her civil rights as well as intentional infliction of emotional distress. Although her complaint did not mention Title VII explicitly, we construe it as stating a Title VII cause of action.[1]
 
 
 5
 All of the defendants moved to dismiss Brown's complaint for failure to exhaust her administrative remedies as required by the Illinois Human Rights Act ("IHRA"). See 68 Ill.Rev.Stat. Sec. 8-111(D) (1983). After Brown's attorney failed repeatedly to respond to the defendants' motions, the case was dismissed without prejudice to Brown's right to file a subsequent claim in federal court.
 
 
 6
 Brown did just that. On August 11, 1986, she filed a Title VII action in the United States District Court for the Northern District of Illinois. Pursuant to a defense motion, however, Judge Bua dismissed Brown's claim as untimely. Initially he ruled that Brown's state Title VII action tolled the ninety-day filing period, but that she had nonetheless filed her federal action one day too late. After considering Magistrate Rosemond's subsequent recommendation that the action be reinstated because of an error in computing the ninety-day filing period,[2] Judge Bua, persuaded by two recent decisions of the district court, reconsidered his earlier position and held that,
 
 
 7
 the commencement of a state court Title VII sex discrimination action within 90 days of receiving the EEOC's right-to-sue letter [does not] toll[ ] the running of the 90-day filing period. Wisniewski v. Commonwealth Edison, 691 F.Supp. 56, (N.D.Ill. 1987) and Sager v. Hunter Corp., [665 F.Supp. 575] slip op., No. 86 C 5923 (N.D.Ill. Oct. 20, 1986).[3]
 
 
 8
 Brown's complaint was dismissed because it was filed in federal district court long after ninety days from the receipt of her right-to-sue letter. Brown appeals claiming that the filing period was tolled during the pendency of her interim state action.
 
 II.
 
 9
 A series of Supreme Court decisions beginning with Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), make clear that Title VII's ninety-day filing period is subject both to waiver, see Mohasco Corp. v. Silver, 447 U.S. 807, 811 n. 9, 100 S.Ct. 2486, 2490 n. 9, 65 L.Ed.2d 532 (1980), and equitable tolling, see Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984); Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 349, 103 S.Ct. 2392, 2395, 76 L.Ed.2d 628 (1983); see also Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (holding that Title VII's filing requirements are not jurisdictional). Baldwin County suggests that equitable tolling is appropriate where the plaintiff is misled by the defendant or notified improperly of her rights by the court, or where a motion for appointment of counsel is pending when the filing period expires. Id. 466 U.S. at 151, 104 S.Ct. at 1725 (citations omitted). Brown, however, does not contend that any of the defendants or the court lulled her into noncompliance with the limitations period. Nor is it contested that Brown was represented by counsel throughout these proceedings. Rather, she argues that her erroneous but good faith filing in Illinois state court tolled the ninety-day filing period because she had a reasonable legal basis for believing that Illinois offered an appropriate forum in which to bring her Title VII action.
 
 
 10
 Brown relies on Fox v. Eaton Corp., 615 F.2d 716 (6th Cir.1980) and Valenzuela v. Kraft, Inc., 801 F.2d 1170 (9th Cir.1986), modified on petition for reh'g, 815 F.2d 570 (1987), in which the Sixth and Ninth Circuits tolled the ninety-day period because the plaintiffs filed their state Title VII actions when concurrent jurisdiction over such claims appeared to exist. Each state subsequently rejected jurisdiction, however, and dismissed the plaintiffs claims. Although filed in federal district court after the expiration of the ninety-day period, both circuit courts permitted tolling and allowed the plaintiffs to bring their Title VII actions because of the perceived inequity of dismissing their claims simply because they failed to predict a subsequent rejection of state court jurisdiction.
 
 
 11
 Whatever the validity of equitable tolling in Fox and Valenzuela, it cannot support Brown's contentions here. For even though state jurisdiction over Title VII was not yet settled in Illinois when Brown filed her suit, see Patzer v. Board of Regents of University of Wisconsin Systems, 763 F.2d 851, 855 n. 4 (7th Cir.1985), the IHRA clearly had limited state court jurisdiction over all employment discrimination actions by requiring that its administrative procedures first be exhausted. Thus, unlike the plaintiffs in Fox and Valenzuela, Brown had no reasonable basis to believe that she could bring her Title VII action directly in the Illinois courts.
 
 
 12
 That the Illinois legislature intended to preclude direct access to the courts for all civil rights claims is evidenced by the IHRA's prohibition that:Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this act.
 
 
 13
 68 Ill.Rev.Stat. Sec. 8-111(D); see also Cahoon v. Alton Packaging Corp., 148 Ill.App.3d 480, 101 Ill.Dec. 934, 499 N.E.2d 522 (5th Dist.1986), appeal dismissed, --- U.S. ----, 107 S.Ct. 3202, 96 L.Ed.2d 689 (1987) (although decided after Brown filed her claim, the court's rejection of direct access for a federal ADEA claim was based on the plain language and clear intent of the IHRA that all civil rights claims be prosecuted in the administrative forum before reaching the court). Moreover, before Brown filed her civil rights action, the Illinois Supreme Court clearly recognized the broad preemptive effect of the IHRA and the need to exhaust its extensive administrative requirements before invoking state court jurisdiction over any civil rights claim.[4] See Mein v. Masonite Corp., 109 Ill.2d 1, 92 Ill.Dec. 501, 485 N.E.2d 312 (1985); see also Thakkar v. Wilson Enterprises, Inc., 120 Ill.App.3d 878, 76 Ill.Dec. 331, 458 N.E.2d 985 (1st Dist.1983); Dykstra v. Crestwood Bank, 117 Ill.App.3d 821, 73 Ill.Dec. 307, 454 N.E.2d 51 (1st Dist.1983). Although the Mein court dealt with an age discrimination claim brought under the Illinois Human Rights Act, it rejected direct access to the Illinois courts for redress of all civil rights violations without qualification. Thus, to preserve the state's administrative scheme for settling civil rights disputes, the court held that
 
 
 14
 courts have no jurisdiction to hear independent actions for civil rights violations. It is clear that the legislature intended the Act, with its comprehensive scheme of remedies and administrative procedures, to be the exclusive source for redress of alleged human rights violations.
 
 
 15
 Mein, 92 Ill.Dec. at 304, 485 N.E.2d at 315.
 
 
 16
 The absolute language of the IHRA along with the Illinois Supreme Court's unqualified rejection of direct state court jurisdiction over civil rights claims and the defendants' motions to dismiss for failure to exhaust the IHRA's administrative requirements, all put Brown overwhelmingly on notice that she lacked any reasonable legal basis for invoking state court jurisdiction over her claims. Equitable tolling is particularly inappropriate where Brown not only filed erroneously in state court despite abundant notice that she first needed to exhaust the IHRA's administrative requirements, but also where she failed even to pursue the state action she now claims, in equity, should permit her to refile in federal court. Unlike the claimants in Valenzuela and Fox, Brown has neither "exercised great diligence" nor "demonstrated the due diligence which statutes of limitations are designed to engender." See Baldwin County, 466 U.S. at 151, 104 S.Ct. at 1725 ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").[5]
 
 
 17
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The defendants argue that Brown's state court complaint fails to state a cause of action under Title VII and therefore cannot properly toll the filing period for her federal Title VII action. As Johnson v. Railway Express Agency, Inc. makes plain,
 the tolling effect given to ... timely prior filings ... depend[s] heavily on the fact that those filings involve[ ] exactly the same cause of action subsequently asserted.
 421 U.S. 454, 467, 95 S.Ct. 1716, 1723, 44 L.Ed.2d 295 (1975). Although Brown's complaint does not invoke Title VII as a basis for her claim explicitly, it does indicate that an EEOC charge had been made and that the complaint was filed within ninety days after receiving an EEOC right-to-sue letter. Notwithstanding the fact that the filing of a right-to-sue letter, without more, does not commence a Title VII action, see Sager v. Hunter Corp., 665 F.Supp. 575, 579 (N.D.Ill.1986) (citing Baldwin County Welcome Center v. Brown, 466 U.S. 147, 150, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984)); Brown v. J.I. Case Co., 756 F.2d 48, 50 (7th Cir.1985), the reference in Brown's complaint to EEOC procedures did give the defendants some notice that she was pursuing a federal Title VII action. Moreover, unlike the state court complaint filed in Sager, that explicitly invoked Illinois statutory law as the basis for its cause of action as well as the court's jurisdiction, Brown's complaint merely alleges that the defendants' conduct was "in violation of law and her civil rights." Thus, on its face, Brown's complaint did not set out a state cause of action, leaving the defendants to guess which counts were brought under Title VII and which under Illinois law.
 Though inartfully drafted, we are hesitant to judge Brown's complaint so narrowly as to foreclose the full adjudication of her claim on the mere failure to cite Title VII explicitly. Such a reed seems entirely too thin to support the weight of our decision given the relative quagmire of Title VII procedure. See Patzer v. Bd. of Regents of Univ. of Wis. Sys., 763 F.2d 851, 854 n. 2 (7th Cir.1985) (unresolved whether Title VII is exclusively within federal court's jurisdiction); see also Kremer v. Chemical Const. Corp., 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (effectively precluding Title VII suit in federal court after complying with required state antidiscrimination procedures because of the collateral estoppel effect given to the earlier determination).
 
 
 [2]
 The district court initially counted the two weekend days immediately prior to the filing date in determining that Brown took ninety-one days after receipt of her EEOC right-to-sue letter to initiate her Title VII action. Rule 6(a) of the Fed.R.Civ.Pro., however, states that weekends are to be counted unless the last day of the ninety-day period ends on a weekend. In that event, the filing period runs until the end of the next day the court is open for filing
 
 
 [3]
 Apparently, the attorney who initially represented Brown also filed, and then abandoned, the state Title VII actions in Wisniewski and Sager and then attempted to refile in federal district court. In each case, the district court refused to allow the erroneous state filing to toll the ninety-day filing period
 
 
 [4]
 The Human Rights Act prohibits sexual harassment in employment and retaliation for opposing sexual harassment. Ill.Rev.Stat. ch. 68, paragraphs 2-102(D), 6-101(A). Under the Act, an employee complaining of such misconduct must begin by filing a discrimination charge with the Human Rights Department. (p 7-102(A).) The Department conducts its own investigation of the charge and reports to its Director. (p 7-102(C) and (D).) If the Director concludes that a violation has occurred and that conciliation will not resolve it (p 7-102(D) and (E)), the Department prepares a written complaint and files it with the Human Rights Commission. (p 7-102(F).) The Commission will then require the employer to answer the charges in a public hearing. (p 8-106(C)(4) and (G).) At its conclusion, the hearing officer submits his proposed findings to the Commission, which may adopt, reject, or modify them. (p 8-107(E).) Under p 8-111(A)(1)-(3), either party may seek appellate review of the Commission's decision (or of a determination that the charge does not warrant a hearing) under the deferential standards of the Illinois Administrative Review Law
 
 
 [5]
 Brown's contention that she somehow satisfied the IHRA's administrative requirements by complying with the minimal exhaustion requirements needed to obtain an EEOC right-to-sue letter is unavailing. Such a proposition represents the very circumvention of Illinois's conciliation scheme that prompted its legislature to enact section 8-111(D) of the IHRA and that concerned the courts in Mein and Cahoon. Title VII provides expressly that "nothing in this subchapter shall be deemed to exempt or relieve any person from any ... duty ... provided by any ... law of any State...." 42 U.S.C. Sec. 2000e-7. The Illinois legislature constructed an extensive administrative scheme designed to facilitate the quick resolution of civil rights disputes and reduce unnecessary litigation. Brown's contention is an unwarranted fiat around that effort and will not be permitted here