Colleen DONNELLY, Plaintiff–Appellee,
Cross–Appellant,

v.

YELLOW FREIGHT SYSTEM, INC.,
Defendant–Appellant,
Cross–Appellee.

Nos. 88–1733, 88–1797.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1988.

Decided April 28, 1989.[1]

Rehearing and Rehearing En Banc
Denied July 17, 1989.

1. Pursuant to Circuit Rule 40(f), this opinion has been circulated to all the active members of the court because it overrules *Brown v. Reliable Sheet Metal Works, Inc.*, 852 F.2d 932 (7th Cir. 1988), and creates a conflict with *Valenzuela v. Kraft, Inc.*, 739 F.2d 434 (9th Cir.1984). No judge in regular active service has requested a hearing *en banc.*

Steven J. Teplinsky, Fagel Haber & Maragos, Chicago, Ill., for defendant-appellant, cross-appellee.

Paul L. Salzetta, John J. Henely, Ltd., Chicago, Ill., for plaintiff-appellee, cross-appellant.

Before BAUER, Chief Judge, CUMMINGS, and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

This case is before us on appeal from a judgment by the district court entered in favor of plaintiff, Colleen Donnelly. Plaintiff brought suit against her employer, defendant Yellow Freight System, Inc., on charges of sex discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* For the following reasons, we affirm the district court's decision on all issues, except the court's order denying an award of prejudgment interest.

I.

Donnelly applied for a dock-worker position at Yellow Freight on October 26, 1982. Although Yellow Freight was not hiring at the time, Neil Casey, the terminal manager, told her that when Yellow Freight began hiring again, Donnelly would be the next dock worker hired. About the same time, Donnelly also applied for jobs at Jewel Food Stores and Retail Inventory Service Co. (RIS). In December of 1982, RIS hired Donnelly on a part-time basis and she worked there through June of 1984.

Despite securing a job at RIS, Donnelly called Casey weekly to inquire about job openings at Yellow Freight. Although Yellow Freight began hiring dockworkers again in February of 1983, Casey not only continued to tell Donnelly that Yellow Freight was not hiring, but also falsely reported that Yellow Freight was laying off dockworkers. Eighteen months later, Donnelly was finally hired by Yellow Freight.

In March of 1985, Donnelly filed charges with the Equal Employment Opportunity Commission (EEOC). In her first charge she alleged that the defendant discriminated against her on the basis of sex by failing to offer her employment as a dock worker. In her second charge she alleged that the defendant discriminated against her on the basis of sex subsequent to her hiring at Yellow Freight. (This charge was later dismissed on summary judgment and no appeal was taken.) On March 15, plaintiff received a Notice of Right to Sue Within 90 Days from the EEOC.

On May 22, 1985, within the 90–day limitation period, plaintiff filed a two-count complaint against the defendant in the Circuit Court of Cook County, alleging sex discrimination in violation of the Illinois Human Rights Act (IHRA), Ill.Rev.Stat. ch. 68, ¶ 1–101 *et seq.* (1983). On June 28, 1985, defendant filed a motion to dismiss plaintiff's complaint for failure to exhaust state administrative remedies as required by the IHRA. On July 17, Donnelly sought leave to file an amended complaint, appending proposed Counts III and IV. Counts III and IV realleged the same facts as in Counts I and II of the original complaint but were premised under Title VII. Although Donnelly had not yet filed the motion to amend her complaint, Yellow Freight objected to the proposed motion.

On August 9, Donnelly actually filed her motion to amend the complaint. On the same date, the circuit court entered an agreed order dismissing her original complaint with prejudice and continuing her contested motion for leave to file an amended complaint. This order essentially resulted in a lawsuit without a complaint. For a discussion of the problems attending the agreed order, see n. 10, *infra.*

On August 14, 1985, Yellow Freight filed a petition to remove the case to the United States District Court. The district court granted Donnelly's motion to file an amended complaint on September 13, and the complaint was filed on September 20. Yellow Freight moved to dismiss the complaint on the grounds that it was filed more than 90 days after the EEOC issued the right to sue letter. The court denied the defendant's motion.

On November 3, 1987, the case was tried before a United States magistrate pursuant to the consent of the parties. *See* 28 U.S.C. § 636(c). Because Yellow Freight admitted liability for sex discrimination, only the issues of back pay and mitigation of damages were tried. The magistrate concluded that Donnelly had exercised reasonable diligence in her search for other employment and awarded her damages equal to the amount she would have earned had she been hired by Yellow Freight on February 8, 1983, less her wages earned at RIS. The magistrate also found that plaintiff was entitled to salary increases adopted at Yellow Freight during the eighteen-month period in which she was not hired, and that she was entitled to pension fund contributions and prejudgment interest. The district court affirmed the magistrate's judgment in all respects except that it reversed the magistrate's award of prejudgment interest to the plaintiff.

Yellow Freight then brought this appeal. First, Yellow Freight alleges that the 90–day limitations period within which to file a Title VII complaint expired before Donnelly filed her federal claim. Second, Yellow Freight alleges that the district court abused its discretion in finding that Donnelly acted with reasonable diligence to mitigate her damages. On cross-appeal, Donnelly argues that the district court abused its discretion by failing to award her prejudgment interest. We reject both of Yellow Freight's arguments and we agree with Donnelly's contention that she is entitled to prejudgment interest.

## II.

Before reaching the merits of this case, we first must decide whether Donnelly's Title VII cause of action was timely filed. In order to bring the action, Donnelly had to file suit against Yellow Freight within 90 days of the issuance of the EEOC's Notice of Right to Sue. Although Donnelly filed her state claim in state court within the 90–day window, she did not file her Title VII claim in federal court within the requisite time period. Yellow Freight's first argument is that any filing in state court, whether before or after the close of the 90–day window, cannot toll the limitation period because Title VII jurisdiction is exclusively federal. Therefore, defendant continues, plaintiff did not effectively file her complaint until she filed it in federal court on September, 20, 1985, which was more than six months after the EEOC issued the Notice of Right to Sue. Second, defendant argues that even if federal and state courts share jurisdiction over Title VII claims, plaintiff's amended claim does not relate back to her original claim because her original complaint was brought under the IHRA.

### A.

■ Unless Congress includes in the statute an explicit statement vesting jurisdiction exclusively in federal court, state courts may presume that they share jurisdiction concurrently with the federal courts over a federal cause of action. *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477–78, 101 S.Ct. 2870, 2874–75, 69 L.Ed.2d 784 (1981). This is a presumption deeply imbedded in the history of our federal system. *See* The Federalist No. 82 (A. Hamilton). Because federal courts are courts of limited jurisdiction, *see Sheldon v. Sill*, 8 How. 441, 12 L.Ed. 1147 (1850), state

courts must stand ready to vindicate federal rights, subject to review by the Supreme Court, should Congress decide not to confer jurisdiction upon the federal courts to hear a particular federal claim. *See Gulf Offshore,* 453 U.S. at 478 n. 4, 101 S.Ct. at 2875 n. 4 *(citing Martin v. Hunter's Lessee,* 1 Wheat. 304, 346–48, 4 L.Ed. 97 (1816)). The presumption in favor of concurrent jurisdiction may be rebutted only by an "unmistakable implication (of exclusive jurisdiction) from legislative history," *id.* at 478, 101 S.Ct. at 2875 *(citing California v. Arizona,* 440 U.S. 59, 66–68, 99 S.Ct. 919, 924–25, 59 L.Ed.2d 144 (1979), or by a "disabling incompatibility between the federal claim and state-court adjudication." *Id.* at 477–78, 101 S.Ct. at 2875–76 *(citing Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 507–08, 82 S.Ct. 519, 522–23, 7 L.Ed.2d 483 (1962); *see also Claflin v. Houseman,* 93 U.S. 130, 136, 23 L.Ed. 833 (1876)).

■■■ Because Congress failed to address this issue explicitly, Yellow Freight urges us to find that the presumption of concurrent jurisdiction is not applicable to Title VII and that the circumstances warrant a finding of exclusive federal jurisdiction. In so doing, Yellow Freight asks us to adopt the Ninth Circuit's conclusion in *Valenzuela v. Kraft, Inc.,* 739 F.2d 434 (9th Cir.1984), and hold that both the statutory language and the legislative history of Title VII raise the unmistakable implication of exclusive federal jurisdiction.[2] *See also*

*Bradshaw v. General Motors Corp.,* 805 F.2d 110, 112 (3rd Cir.1986) (Title VII jurisdiction is exclusively federal);[3] *Dickinson v. Chrysler Corp.,* 456 F.Supp. 43 (E.D. Mich.1978) (same). *But see Bennun v. Board of Governors of Rutgers,* 413 F.Supp. 1274 (D.N.J.1976) (Title VII jurisdiction is concurrent); *Greene v. County School Bd.,* 524 F.Supp. 43 (E.D.Va.1981) (same).[4]

We decline the invitation to join in the conclusion of the *Valenzuela* court. The *Valenzuela* court found Congress' grant of jurisdiction to the federal district courts, *see* 42 U.S.C. § 2000e–5(f)(3) ("[e]ach United States district court ... shall have jurisdiction of actions brought under this subchapter"), and the accompanying procedural directives,[5] to be a persuasive indication of exclusive federal jurisdiction. However, "the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." *Gulf Offshore,* 453 U.S. at 479, 101 S.Ct. at 2876 *(citing United States v. Bank of New York & Trust,* 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936)). *See also Charles Dowd,* 368 U.S. at 506, 82 S.Ct. at 522; *Galveston, H. & S.A.R. Co. v. Wallace,* 223 U.S. 481, 32 S.Ct. 205, 56 L.Ed. 516 (1912). Moreover, the legislative history of Title VII does not persuade us that Congress intended jurisdiction over the statute be exclusively federal. The *Valenzuela* and *Dickinson* courts found it significant that the history contained references

---

**2.** In reaching its conclusion, the *Valenzuela* court also relied on dictum from the Supreme Court's opinion in *Lehman v. Nakshian,* 453 U.S. 156, 164 n. 12, 101 S.Ct. 2698, 2703 n. 12, 69 L.Ed.2d 548 (1981). However, the *Lehman* dictum concerned the allocation of jurisdiction in favor of the federal district courts and to the exclusion of the Court of Claims. As such, it does not lend support to the Ninth Circuit's conclusion.

**3.** Although the *Bradshaw* court stated that Title VII jurisdiction was exclusively federal, it provided no reasoning to support its conclusion. Therefore, we do not find this case to be persuasive authority.

**4.** This circuit has yet to squarely address whether jurisdiction over actions brought pursuant to Title VII is exclusively federal. However, the

reasoning of an earlier decision of this circuit, *Brown v. Reliable Sheet Metal Works, Inc.,* 852 F.2d 932 (7th Cir.1988), assumes that Title VII jurisdiction is exclusively federal. We now overrule the *Brown* decision. For a further discussion of *Brown* see *infra.*

**5.** *See* 42 U.S.C. § 2000e–5(j) ("Any civil action brought under this section ... shall be subject to appeal as provided in sections 1291 and 1292, Title 28") (Sections 1291 and 1292 govern the jurisdiction of the United States Court of Appeals). *See also* 42 U.S.C. § 2000e–5(f)(2) ("any temporary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with Rule 65 of the Federal Rules of Civil Procedure").

to federal courts but not to state courts.[6] *Valenzuela,* 739 F.2d at 436 (*quoting Dickinson,* 456 F.Supp. at 46). But because Congress has the power to grant or deny jurisdiction to the federal district courts, the only significance that can be garnered from these references is that Congress intended to grant jurisdiction to the federal courts.

On the other hand, the logical consequences of other passages from the legislative history lead to the conclusion that jurisdiction over Title VII is shared between the state and federal courts. Title VII was never intended to be the exclusive remedy for employment discrimination. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1974); *see also* 110 Cong.Rec. 7207 (1964); Interpretive Memorandum of Senators Clark and Case, 110 Cong.Rec. 7214 (1964). In addition to recognizing the force of other laws designed to combat employment discrimination, Congress also wanted to encourage resort to state employment discrimination laws. *See* 110 Cong.Rec. 12707, 13081, 13087. An examination of the principles of res judicata and collateral estoppel applicable to Title VII actions reveals that this intent would be frustrated if jurisdiction over Title VII was exclusively federal. Title 28 U.S.C. § 1738 requires federal courts to afford the same full faith and credit to state court judgments that would apply in the state's own courts. Thus federal courts must give preclusive effect to a previous state court judgment under state employment discrimination laws. *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Wakeen v. Hoffman House, Inc.,* 724 F.2d 1238 (7th Cir.1983); *Unger v. Consolidated Foods Corp.,* 693 F.2d 703 (7th Cir.1982), *cert. denied,* 460 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d 366 (1983). If Title VII jurisdiction was exclusively federal, a plaintiff would have to bring suit in federal court to preserve all available remedies for employment discrimination. Such a situation effectively precludes state court adjudication of state-created rights, thereby discouraging the creation and development of state employment discrimination laws, contrary to Congressional intent.

Although there is little in the legislative history of Title VII to rebut the presumption of concurrent jurisdiction, we must also examine whether there exists a "disabling incompatibility" arising from state court adjudication of a Title VII claim. To resolve this question, the Supreme Court has suggested an examination of such factors as the desirability of uniform interpretation of the statute, the expertise of federal judges in federal law, and the assumed greater hospitality of federal courts to peculiarly federal claims. *Gulf Offshore,* 453 U.S. at 483–84, 101 S.Ct. at 2877–78. *See also* Redish & Muench, *Adjudication of Federal Causes of Action in State Court,* 75 Mich.L.Rev. 311, 329–35 (1976); Note, *Exclusive Jurisdiction of Federal Courts in Private Civil Actions,* 70 Harv.L.Rev. 509, 511–15 (1957). We find that none of these factors compels a finding of exclusive federal jurisdiction.

There is no reason to believe that concurrent jurisdiction will lead to the arbitrary development of Title VII law. There already exists a great volume of Title VII law developed by the Supreme Court and lower federal courts and the states are bound by the Supremacy Clause to follow federal law.[7] Although it is true that at this point in time federal judges may have

---

**6.** The 1963 House Report states that "the district courts of the United States ... are given jurisdiction of actions brought under this title." H.R.Rep. No. 914, 88th Cong., 1st Sess. 29 (1963), *reprinted in* 1964 U.S.Code Cong. & Admin.News 2355, 2405; *accord* H.R.Rep. No. 238, 92nd Cong., 1st Sess. 12 (1971); *reprinted in* 1972 U.S.Code Cong. & Admin.News 2137, 2147.

**7.** Even when federal law is not clearly developed or preempts state law, jurisdiction may be exercised concurrently. For example, even though § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, authorizes federal courts to fashion a body of federal law for the enforcement of collective bargaining agreements, *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), state courts exercise jurisdiction over claims brought under § 301(a) concurrently with the federal courts. *See Charles Dowd,* 368 U.S. 502, 82 S.Ct. 519.

developed greater expertise with respect to Title VII claims, there is no reason to presume state courts are not competent to adjudicate these issues. Such a notion overlooks the obvious; most states have enacted employment discrimination laws, which are routinely litigated in state courts, and state court judges are accordingly quite familiar with discrimination issues.

In addition, we find no basis for the assumption that state courts might not faithfully enforce Title VII. Given that state courts exercise concurrent jurisdiction over civil rights actions brought under 42 U.S.C. § 1983, *Martinez v. California,* 444 U.S. 277 n. 7, 100 S.Ct. 553 n. 7, 62 L.Ed.2d 481 n. 7 (1980), it is hard to imagine that state courts would not be hostile to section 1983 actions, but would be hostile to Title VII actions. Similar, although not identical, policy issues underlie both statutes. Second, most states have enacted employment discrimination laws. Whether enacted by state government or federal government, the same policy issues underlie employment discrimination laws. Thus from a theoretical viewpoint, state courts are as amenable to Title VII claims as federal courts. In addition, any concern either party may have over the fairness of the forum is easily remedied. A plaintiff can file the complaint in federal court and a defendant can remove the complaint to federal court.[8]

Finally, we find support for our conclusion that the state courts have concurrent jurisdiction with the federal courts over Title VII actions from Congress' decision to vest state courts with concurrent jurisdiction over claims brought under the Age Discrimination in Employment Act of 1967 ("ADEA"), a statute predicated upon Title VII in many ways. *See* 29 U.S.C. § 626(c)(1) ("[a]ny person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter ...").[9] *See also Lehman v. Nakshian,* 453 U.S. 156, 164 n. 12, 101 S.Ct. 2698, 2703 n. 12, 69 L.Ed.2d 548 (1981). Both statutes seek to eradicate the evil of employment discrimination based upon membership in an identifiable group. Whereas Title VII is aimed at ending discrimination based upon race, color, religion, sex or national origin, the ADEA is directed toward ending discrimination based upon age. The prohibitions of the ADEA generally follow those of Title VII and courts have relied on precedent under Title VII to interpret comparable ADEA provisions. *See, e.g., Hodgson v. First Fed. Sav. & Loan Ass'n,* 455 F.2d 818, 820 (5th Cir.1972) ("[w]ith a few minor exceptions the prohibitions of this enactment are in terms identical to those of Title VII ... except that 'age' has been substituted for 'race, color, religion, sex or national origin.' "). Commentators describe the ADEA as a hybrid of Title VII and the Fair Labor Standards Act of 1938 ("FLSA"): the substantive provisions are drawn from Title VII, but the remedies are those of the FLSA. *See* B. Schlei & P. Grossman, *Employment Discrimination Law* 485 (1983). To prove an ADEA claim, plaintiffs generally proceed under a disparate treatment theory (although in rare circumstances a disparate impact claim may be brought).

---

**8.** The opportunity to exercise removal jurisdiction also explains some Supreme Court dictum which seems to suggest that Title VII jurisdiction is exclusively federal. *See, e.g., Alexander,* 415 U.S. at 47, 94 S.Ct. at 1019 (lists state and local agencies, and federal courts, but not state courts as forums for enforcement); *Kremer,* 456 U.S. at 468, 102 S.Ct. at 1890 (federal courts are "entrusted with ultimate enforcement responsibility" over Title VII actions).

**9.** Title VII, on the other hand, provides that the United States district courts shall have jurisdiction over claims brought under the Act. Because the enforcement provisions of the ADEA,

29 U.S.C. § 626, incorporate by reference most of the enforcement provisions of the Fair Labor Standards Act of 1938 ("the FLSA"), 29 U.S.C. § 201 *et seq.,* we do not find the different jurisdictional language of Title VII and the ADEA significant. Among other things, the FSLA provides that an aggrieved person may bring an action in any court of competent jurisdiction. 29 U.S.C. § 216(b). Thus the different jurisdictional language is not the conscious result of an attempt to differentiate between jurisdiction over the ADEA and Title VII, but rather the result of the specific enforcement provisions of the FLSA.

The order and allocation of evidentiary burdens, and the standards of proof set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII disparate treatment case, apply to claims brought under the ADEA. *See* Schlei & Grossman at 497–504. Given the extensive similarities between the two statutes, and the fact that state courts have jurisdiction over private-sector ADEA claims, it seems incongruous to assume that state courts are incompetent to adjudicate Title VII claims.

■■■ As an alternative to its attempt to overcome the presumption of concurrent jurisdiction, Yellow Freight contends Illinois courts do not have jurisdiction to hear federal Title VII claims as a matter of Illinois state law. For this unique proposition, Yellow Freight relies on the Illinois Supreme Court's decision in *Mein v. Masonite Corp.,* 109 Ill.2d 1, 92 Ill.Dec. 501, 485 N.E.2d 312 (1985). In *Mein,* the plaintiff alleged that he was wrongfully discharged from his job in violation of Illinois public policy. Because the plaintiff failed to allege a violation of the Illinois Human Rights Act (the IHRA), the Illinois Supreme Court dismissed his complaint for failure to state a cause of action. In reaching its conclusion, the court stated that the Illinois "courts have no jurisdiction to hear independent actions for civil rights violations." *Mein,* 92 Ill.Dec. at 504, 485 N.E.2d at 315. Drawing upon this dictum, Yellow Freight argues that, at least in Illinois, state courts do not provide a forum for Title VII litigation and therefore jurisdiction lies exclusively with the federal courts.

We must reject this argument. Even if the *Mein* court did, in fact, intend to exclude Title VII claims from the Illinois courts,[10] neither the Illinois courts nor legislature have the power to close state court doors to federal causes of action. When presented with a federal claim over which concurrent jurisdiction exists, state courts are under a "duty to exercise (jurisdiction)" over the federal claim. *Mondou v. New York, N.H. & H.R.R.,* 223 U.S. 1, 58, 32 S.Ct. 169, 178, 56 L.Ed. 327 (1912) (state courts required to hear actions arising under the Federal Employers Liability Act); *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947) (state courts must hear actions arising under the Emergency Price Control Act). *Cf. Palmore v. United States,* 411 U.S. 389, 402, 93 S.Ct. 1670, 1678, 36 L.Ed.2d 342 (1973) ("this court unanimously held (in *Testa* ) that Congress could constitutionally require state courts to hear and decide Emergency Price Control Act cases involving the enforcement of federal penal laws"). *But see Brown v. Gerdes,* 321 U.S. 178, 188, 64 S.Ct. 487, 492, 88 L.Ed. 659 (1944) (only law-making power of the State of New York has power to confer jurisdiction upon the New York state courts; Congress does not have this power). *See generally,* Redish & Muench, *supra.* Once Congress has vested jurisdiction over a federal claim in the state courts, the state courts, including the courts of Illinois, are under a constitutional obligation to exercise jurisdiction.

■■■ We must address one final point. Donnelly did not exhaust her state administrative remedies before filing her state law claim in state court. In *Brown v. Reliable Sheet Metal Works, Inc.,* 852 F.2d 932, 934–35 (7th Cir.1988), this court held that a state court filing did not toll the Title VII 90–day filing period because the plaintiff did not exhaust her state administrative remedies. On the basis of *Felder v. Casey,* —— U.S. ——, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988), we now overrule *Brown.* In *Felder,* the Supreme Court held that a plaintiff who filed a section 1983 action in state court did not have to comply with the

---

**10.** Yellow Freight reads the *Mein* decision too broadly. At issue in *Mein* was whether the plaintiff could bring a state action, independent of the IHRA, for human rights violations. The court responded "(i)t is clear that the legislature intended the (IHRA), with its comprehensive scheme of remedies and administrative procedures, to be the exclusive source for redress of alleged human rights violations ... the legislature intended ... to avoid direct access to the courts for redress of civil rights violations." *Mein,* 92 Ill.Dec. at 504, 485 N.E.2d at 315. The only issues before the *Mein* court were the scope and intent of the IHRA; the court did not purport to address issues of federal law.

state's notice of claim statute because the state statute conflicted both in purpose and effect with the remedial objectives of section 1983 and because enforcement of the statute would produce different outcomes based solely upon whether the claim was asserted in state or federal court. Similar concerns are applicable here. This is not to say that a state could not impose an exhaustion requirement for claims based entirely on state law but here, of course, the foundation was Title VII and plaintiff complied with her requirement under that statute. Thus Donnelly's failure to exhaust her state administrative remedies does not defeat the tolling effect of her state court filing upon Title VII's 90-day window.

Because we find that jurisdiction over Title VII claims is vested in both state and federal court, we reject Yellow Freight's argument that the state court filing did not toll the 90-day statute of limitations.

### B.

■ Yellow Freight next argues that even if there exists concurrent jurisdiction, plaintiff's complaint was not timely filed because her amended complaint, filed in federal court and alleging Title VII violations, does not relate back to her original complaint, filed in state court and alleging state law violations. Defendant claims that it did not have notice of the Title VII claims because the original complaint only alleged violations of the IHRA.

Yellow Freight misconstrues the standard by which an amended complaint is deemed to relate back to the date of the original complaint for the purposes of tolling the statute of limitations. Under Federal Rule of Civil Procedure 15(c), an amended complaint relates back to the date of the original pleading "whenever the claim ... asserted in the amended pleading

arose out of the conduct, transaction or occurrence set forth ... in the original pleading." Contrary to defendant's assertion, the same substantive legal theory need not be alleged in both complaints; rather the claims need only arise out of the same "conduct, transaction or occurrence." Because the Title VII and IHRA claims are based upon identical facts and circumstances, plaintiff's amended complaint clearly relates back to the date of the original complaint.

■ The only problem with the above analysis is that the original complaint was dismissed before the amended complaint was filed. If we adhere to the terms of the agreed order entered by the state circuit court, there is no original complaint to which the amended complaint could relate back. However, the agreed order, drafted by the parties, utterly makes no sense.[11] Because of this and because Yellow Freight will suffer no prejudice, we refuse to adhere to the literal consequences of the order. Any claim of prejudice by Yellow Freight is disingenuous. Yellow Freight received notice that an employment discrimination claim was pending against it when plaintiff filed her state court claim in state court. *See Sessions v. Rush State Hospital,* 648 F.2d 1066, 1070 (5th Cir.1981) ("[s]o long as the Title VII claim is based on the discrimination originally charged in the complaint, allowing it to relate back ... works no hardship on the defendant for the original complaint furnished adequate notice of the nature of the suit"). Second, in view of the fact that the order continued the plaintiff's contested motion, Yellow Freight cannot now argue that it thought that the threat of litigation had passed upon entry of the agreed order. Yellow Freight also sought removal of the lawsuit

---

11. Under the agreed order, plaintiff's original complaint was dismissed with prejudice, but her motion to file an amended complaint was continued. Problems abound in this order. To begin with, the original complaint should not have been dismissed with prejudice. The complaint was dismissed because plaintiff failed to exhaust her administrative remedies; in such a circumstance, the proper remedy is to dismiss the complaint *without prejudice.* Second, once the original complaint was dismissed, there was no point in continuing plaintiff's motion to file an amended complaint. The amended complaint would have nothing to amend. Further, a future complaint alleging Title VII violations would have been barred by the doctrine of res judicata because the original complaint alleging IHRA violations was dismissed *with prejudice.*

after the agreed order was entered.[12] For these reasons, we find the plaintiff's amended complaint relates back to the filing date of the original complaint and thus was timely filed.

### III.

We may now address the substantive issues raised on this appeal. As already mentioned, Yellow Freight admitted liability and only the issue of damages was tried before the magistrate. Yellow Freight contends that the damage award should be reversed because Donnelly failed to exercise reasonable diligence in mitigating her damages. Title VII provides that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S. § 2000e–5(g). The district court adopted the magistrate's finding that Donnelly did, in fact, exercise reasonable diligence. This court is bound by the district court's award of damages unless that determination is clearly erroneous. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *United States v. City of Chicago,* 853 F.2d 572, 578 (7th Cir.1988).

Because a plaintiff's failure to mitigate damages is an affirmative defense, the employer bears the burden of proof on this issue. *Wheeler v. Snyder Buick, Inc.,* 794 F.2d 1228, 1234 (7th Cir. 1986). In order to succeed on its claim, Yellow Freight must prove that Donnelly was not reasonably diligent in seeking other employment, and that with the exercise of reasonable diligence there was a reasonable chance the employee might have found comparable employment, the earnings of which would offset any damages awarded. *Id.* Yellow Freight contends that Donnelly's part-time employment with RIS does not demonstrate reasonable diligence. We disagree.

When a plaintiff is denied initial employment, he or she can satisfy the mitigation requirement by demonstrating a continuing commitment to be a member of the work force. This circuit has held previously that part-time work in another employment field satisfies the mitigation requirement. *See, e.g., Wheeler,* 794 F.2d 1228, *Orzel v. City of Wauwatosa,* 697 F.2d 743 (7th Cir.1983), *cert. denied,* 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983); *Sprogis v. United Airlines, Inc.,* 517 F.2d 387 (7th Cir.1975). Not only did Donnelly accept a part-time job with RIS, she continued to inquire about a position at Yellow Freight and continued to be reassured by Mr. Casey that she would be the first person hired when a position became available. On the basis of these facts, the district court's award of damages was not clearly erroneous and so stands.

The last issue left to decide is whether Donnelly is entitled to prejudgment interest on her damage award. The decision to grant or deny an award of prejudgment interest lies within the discretion of the district court. *Taylor v. Philips Industries, Inc.,* 593 F.2d 783, 787 (7th Cir.1979). In this case, the district court denied the magistrate's award of prejudgment interest because the issue of plaintiff's diligence was "close." Whether or not an award of interest should be granted turns upon whether the amount of damages is easily ascertainable, not whether the issue of mitigation was "close." *See, e.g., Domingo v. New England Fish Co.,* 727 F.2d 1429, 1446, *modified,* 742 F.2d 520 (9th Cir.1984); *Behlar v. Smith,* 719 F.2d 950, 954 (8th Cir.1983), *cert. denied sub nom. Univ. of Arkansas Bd. of Trustees v. Greer,* 466 U.S. 958, 104 S.Ct. 2169, 80 L.Ed.2d 552 (1984); *EEOC v. Wooster Brush Co.,* 727 F.2d 566, 578 (6th Cir.), *cert. denied,* 467 U.S. 1241 (1984). Refusal to award interest based upon the reasoning articulated by the district court is an abuse of discretion. *See Hanna v. American Motors Corp.,* 724 F.2d 1300, 1311 (7th

---

**12.** This removal was defective because at the time of removal there was nothing to remove. Although removal was improper, this court is not deprived of jurisdiction because the district court actually had jurisdiction over the amended complaint alleging Title VII violations. *See Grubbs v. General Electric,* 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972).

Cir.1984) cert. denied, 467 U.S. 1241, 104 S.Ct. 3512, 82 L.Ed.2d 821 (1984) (district court's refusal to award prejudgment interest because liability question was "close" was an abuse of discretion). Because Colleen Donnelly's damages were readily ascertainable, the district court should have awarded her prejudgment interest on her damage award.

The decision of the district court is affirmed in all respects except that the matter is returned to the district court with the direction to enter an order granting Donnelly appropriate prejudgment interest.

Affirmed in part, remanded for action consistent with this opinion.