**James F. FORD,**

v.

**RIGIDPLY RAFTERS, INC. et al.**

No. CIV. Y–96–1699.

United States District Court,
D. Maryland.

Nov. 24, 1997.

Paul F. Evelius, Baltimore, MD, for Plaintiff.

Gorman E. Getty, III, Jeffrey S. Getty, Cumberland, MD, for Defendants.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

### I.

Plaintiff James F. Ford brought this Title VII same-sex sexual harassment suit against Rigidply Rafters, Inc. ("Rigidply") and two of its employees in May 1996. Plaintiff alleged that on several occasions Rigidply employee Leonard Orendorf sexually harassed Plaintiff at Rigidply. A jury trial was held in June 1997, at which time the jury returned a verdict for Plaintiff, finding that Orendorf had not sexually harassed Plaintiff, but that Rigidply retaliated against Plaintiff in response to his allegations of sexual harassment, in violation of Title VII. The jury awarded Plaintiff $15,000 in compensatory damages.

The Court had instructed the jury not to consider awarding back pay, pre-judgment interest, and reinstatement or front pay, because those equitable remedies are vested within the Court's discretion. *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 763–64, 96 S.Ct. 1251, 1263–64, 47 L.Ed.2d 444 (1976). The case is now before the Court on Plaintiff's motion for back pay, interest, and reinstatement or front pay. Plaintiff seeks $46,159 in back pay, $4,738 in pre-judgment interest, and reinstatement or $18,-915 in front pay.

Certain facts established at trial or undisputed are relevant in resolving the pending motion. Rigidply terminated Plaintiff on February 11, 1994. Plaintiff earned approximately $18,500 annually at Rigidply. Following his termination, Plaintiff actively sought employment through August 1994 but was unsuccessful because Rigidply allegedly gave

potential employers bad references in retaliation for pursuing his Title VII claim. Apparently frustrated by his inability to find work, Plaintiff performed odd jobs from September 1994 through March 1995, earning approximately $1,000. From April 1995 through July 1995, Plaintiff worked for Patterson's Boat Company, earning $1,626. From July 1995 through December 1995, Plaintiff continued doing odd jobs, earning an additional $3,000. From October 1995 through August 1996, Plaintiff and his wife managed a local diner which did not pay an hourly wage, and ultimately closed for lack of business. In August 1996, Plaintiff had hip surgery, and was unable to work until January 28, 1997. From January 1997 until the June 1997 trial, Plaintiff sought work, ultimately obtaining employment as a church custodian and at a Food Lion supermarket. Plaintiff remains in each organization's employ, earning approximately $265 per week. Based upon his current salary Plaintiff expects to earn approximately $14,000 per year.

## II.

### A.

Plaintiff seeks $46,159 in back pay representing the difference between what he would have earned had he not been discharged from Rigidply ($53,007) and his actual earnings ($6,848) from the time of his discharge until the date of the jury's verdict. Rigidply contends Plaintiff is not entitled to back pay from August 1994 until the trial because he did not actively seek employment and had hip surgery. Rigidply notes that Plaintiff received four offers of employment when he sought a full-time position after his surgery and points to Plaintiff's 1994 and 1995 tax returns, on which Plaintiff listed his occupation as "disabled."

Title VII is a broad remedial statute designed to "make whole" victims of discrimination, and the Supreme Court has emphasized that the district courts have broad equitable discretion to award back pay, front pay, and interest to effectuate the statute's remedial intentions. *Franks v. Bowman Transp. Co.,* 424 U.S. 747, 763–64, 96 S.Ct. 1251, 1263–64, 47 L.Ed.2d 444 (1976); *Albe-*

*marle Paper Co. v. Moody,* 422 U.S. 405, 416–17, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975). A Title VII plaintiff who is unable to find comparable work is entitled to back pay "as a matter of course" unless the defendant produces evidence that plaintiff did not use reasonable efforts to mitigate damages. *Martin v. Cavalier Hotel Corp.,* 48 F.3d 1343, 1358 (4th Cir.1995) (citing *Ford Motor Co. v. EEOC,* 458 U.S. 219, 231, 102 S.Ct. 3057, 3065, 73 L.Ed.2d 721 (1982)). To make the plaintiff whole, the award of back pay should be the difference between what the employee would have earned had the wrongful conduct not occurred from the period of termination to judgment, and the actual earnings during that period. *Horn v. Duke Homes,* 755 F.2d 599, 606 (7th Cir.1985); *see also Cline v. Roadway Express, Inc.,* 689 F.2d 481, 489 (4th Cir.1982) (finding this method proper in an ADEA discrimination case).

When the unlawfully-discharged employee produces evidence supporting the claim for back pay, the employer may defeat the claim by proving that the employee failed to mitigate damages by seeking comparable work. *Edwards v. School Bd. of Norton,* 658 F.2d 951, 956 (4th Cir.1981); *Martin,* 48 F.3d at 1358. When the employee fulfills the initial burden of producing evidence establishing an entitlement to back pay, the burden shifts to the employer to prove that the employee was not reasonably diligent, and that a reasonable chance of finding comparable employment existed. *Donnelly v. Yellow Freight Sys., Inc.,* 874 F.2d 402, 411 (7th Cir.1989), *aff'd,* 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990).

Plaintiff has presented evidence of his past earnings and has documented his attempts to find comparable employment since his termination from Rigidply. Defendant does not dispute these factual assertions, and the Court adopts them as findings of fact. It is undisputed that Plaintiff would have earned $53,007 at Rigidply during the period from his termination until judgment, and that he actually earned $6,848 during that period. Plaintiff has thus satisfied his burden of producing evidence supporting his claim for back pay.

■ Rigidply argues Plaintiff was not reasonably diligent in seeking comparable employment. Rigidply summarily concludes Plaintiff did not seek employment from August 1994 until 1997 and that Plaintiff claimed to be "disabled" on his tax returns. Plaintiff testified in his deposition that he stopped looking for employment after August 1994 (Def. Mot. Ex. 1, Ford Dep., at 10–12). Plaintiff's proffered reason, however, was his belief that Rigidply was providing bad references about Plaintiff to potential employers (*Id.;* Pl.'s Mot. Ex. A, ¶ 3). This assertion is supported by the record. Orendorf acknowledges receiving several phone calls from potential employers of Plaintiff requesting references, and that he gave at least one reference during Plaintiff's job search in which he warned a potential employer to "be careful" of Plaintiff (Pl.'s Mot. Ex. B, Orendorf Dep., at 67–69). He also admitted at his deposition that he may have made the same statement to other employers seeking references (*Id.* at 67–69). Moreover, Orendorf testified that he gave the bad reference because Plaintiff was, in his words, "suit happy" (*Id.* at 69). This testimony demonstrates that Rigidply did in fact provide bad references to Plaintiff's potential employers solely because Plaintiff chose to pursue his Title VII claim and, consistent with the jury's verdict, demonstrates Rigidply's unlawful retaliation against Plaintiff. *See Rutherford v. American Bank of Commerce,* 565 F.2d 1162, 1164 (10th Cir.1977) (sustaining trial court's finding that giving former employee bad reference in retaliation for filing suit violated Title VII); *Pantchenko v. C.B. Dolge Co.,* 581 F.2d 1052, 1055 (2d Cir.1978) (same for refusing to provide reference).[1] Rigidply, arguing that Plaintiff was not duly diligent in pursuing comparable employment when its own employees likely caused Plaintiff difficulties, seeks to benefit from its own improper conduct. To refuse an award of back pay in these circumstances would reward Rigidply for its illegal retaliatory behavior and frustrate the broad remedial purpose of Title VII.

Further, Rigidply has failed to carry its burden of proving that Plaintiff failed to make a reasonable effort to find suitable employment. Indeed, the evidence supports the reasonableness of Plaintiff's attempts to find work and validates Plaintiff's explanation. Finally, the fact that Plaintiff performed odd jobs and worked for a boat company demonstrates his efforts to find work after August 1994. Obtaining a part-time job in another field satisfies Plaintiff's obligation to mitigate damages absent a showing by Rigidply that this action was not in good faith. *Donnelly, supra,* 874 F.2d at 411. Rigidply has not offered any evidence beyond summary conclusions that the decision was not genuine. The Court therefore finds that Plaintiff is entitled to back pay from February 1994 until October of 1995.

■ Contrary to Rigidply's assertions, Plaintiff is also entitled to back pay from October 1995 through February 1, 1997, during which time Plaintiff operated a diner with his wife (in addition to performing odd jobs and yardwork) and had hip surgery. First, Plaintiff's disability due to the hip surgery undisputedly rendered him unable to work, and his undisputedly necessary surgery does not vitiate his entitlement to back pay. *Martin, supra,* 48 F.3d at 1358–59 (treating physician's testimony that plaintiff was unable to work satisfies reasonable diligence requirement); *Wells v. North Carolina Bd. of Alcoholic Control,* 714 F.2d 340, 342 (4th Cir. 1983) (plaintiff's testimony of back pain sufficient reason for failure to maintain employment).[2] Second, Plaintiff's decision to start his own business is a legitimate attempt to mitigate damages, and Rigidply fails to dis-

1. The Fourth Circuit previously rejected these cases, finding that Title VII's anti-retaliation provisions did not apply to former employees. The Supreme Court reversed, holding that Title VII's anti-retaliation provisions do apply to former employees. *Robinson v. Shell Oil Co.,* —— U.S. ——, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). The Court based its holding on the broad remedial scope of the statute. *Id.* at ——, 117 S.Ct. at 849.

2. Plaintiff does not contend his "actual wages" for purposes of computing back pay include monies he would have earned at Rigidply during the time he was unable to work. Plaintiff has specifically excluded from his expected Rigidply wages an amount corresponding to the time he was unable to work due to his surgery. *See* Pl.'s Mot. at 11.

prove the good faith of this decision. *Cline, supra,* 689 F.2d at 489 (holding the same in an ADEA case).

■ Rigidply's assertions concerning Plaintiff's tax returns are irrelevant. As discussed above, a wrongfully-discharged employee's inability to work satisfies the mitigation requirement. Even if Plaintiff were truly disabled during that period, this fact does not deprive him of his right to back pay under the law. Further, Plaintiff has indicated he does not know why he listed his occupation as "disabled", and in any event Plaintiff's performance of yard work, shoveling, and other work demonstrates he was not disabled during that time, and that he was pursuing whatever work he could find (Pl.'s Reply Ex. 1).

Plaintiff has met his burden of producing evidence of his entitlement to back pay, and Rigidply has not met its burden of producing evidence that Plaintiff failed to exercise due diligence. Nor does Rigidply dispute the difference between what Plaintiff would have earned at Rigidply, and his actual earnings. The Court therefore finds that Plaintiff is entitled to back pay in the amount of $46,159.

### B.

■ Consistent with Title VII's purpose of making victims of discrimination whole, the Court has the discretion to award prejudgment interest on any back pay award. *Albemarle Paper Co., supra; United States v. Gregory,* 818 F.2d 1114, 1118 (4th Cir. 1987) (noting the discretionary nature of an interest award, and upholding trial court's refusal to award interest where plaintiff indirectly benefitted by her employment with husband's business). An award of interest ensures that inflation does not consume the value of a back pay award, and ensures that a discriminating employer does not reap an unfair benefit from "the inherent delays of

---

**3.** In this case, the Court has refrained from entering judgment on the jury's verdict pending the resolution of the back pay and front pay issues. For purposes of awarding back pay and front pay, the Court considers the date of "judgment" to be the date of the jury's verdict.

**4.** The Court employs the following compound interest formula:

litigation." *See* Alan M. Koral, *Litigation of Damages in Employment Discrimination Cases,* 522 PLI/Lit. 161, 167–68 (1995). The decision to award interest turns on whether the amount of damages is easily ascertainable. *Donnelly, supra,* 874 F.2d at 411. Here, the amount of back pay is easily ascertainable based on Plaintiff's detailed and undisputed accounting of lost earnings. Unlike *Gregory,* no factors exist suggesting the impropriety of such an award.

■ Federal courts utilize various methods to determine interest on a back pay award. Some courts use the IRS rate for calculating underpayment of income tax, while others apply the adjusted prime rate. *See* Koral, *supra,* at 168 (citing cases). Other courts apply the post-judgment rate contained in 28 U.S.C. § 1961. *See Daniels v. Essex Group,* 740 F.Supp. 553, 561–62 (N.D.Ind.1990), *aff'd,* 937 F.2d 1264 (7th Cir. 1991). However, these methods do not adequately reflect the remedial purpose of Title VII. In periods of low inflation, such as the period for which Plaintiff seeks back pay, these methods result in an unfair windfall to the employee by bestowing an amount of interest greater than the inflation rate. In times of high inflation, these methods do not adequately compensate a plaintiff because the rates employed (usually between 5 and 6%) are lower than inflation.

An appropriate method to calculate prejudgment interest is to compound the total amount of back pay for the period between Plaintiff's termination from Rigidply and the date of the jury's verdict,[3] at an interest rate corresponding to the average inflation rate for that time period.[4] In this case, the back pay award should be compounded for the 39 months between Plaintiff's termination and the jury's verdict. The Court will employ a 3% rate of interest, and takes judicial notice that this figure represents an approximate

$$F = P[1 + (i \div 12)]^m$$

Where F=future value of money (total of principal and interest), P=principal (back pay award), i=interest rate expressed as a decimal, and m=number of months compounded. *See* JOSÉ A. SEPULVEDA ET AL, THEORY & PROBLEMS OF ENGINEERING ECONOMICS 12 (1984).

average of the inflation rate over that period of time. *See* THE WORLD ALMANAC & BOOK OF FACTS 131–32 (1997) (listing inflation rates). The Court will therefore enter an order granting Plaintiff $50,880.01 in back pay and compounded interest.[5]

## C.

Plaintiff seeks reinstatement at Rigidply or, if the Court deems reinstatement unfeasible, $18,915 in front pay, representing the difference between his anticipated salary at Rigidply and his expected earnings during the three years following the jury's verdict. Rigidply opposes reinstatement due to the hostile, strained relations between the parties, and also argues Plaintiff is not entitled to front pay because he has had three years since his termination from Rigidply to re-establish himself in the job market, yet has not availed himself of opportunities to do so.

■ Reinstatement and/or front pay, like back pay, is an equitable, discretionary remedy within the province of the Court. *Patterson v. American Tobacco Co.*, 535 F.2d 257, 269 (4th Cir.1976) (permitting the Court to supplement a discretionary back pay award with front pay); *White v. Carolina Paperboard Corp.*, 564 F.2d 1073, 1091 (4th Cir.1977) (same). Reinstatement is not appropriate where, as here, the evidence and testimony of the parties evinces "such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible." *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1423 (4th Cir.1991). In this case, the jury has found, and the evidence indicates, that Rigidply illegally retaliated against Plaintiff. The pleadings filed by the parties strongly suggest that considerable animosity exists between Plaintiff and his former supervisors. Under these circumstances, the Court finds reinstatement is inappropriate under Duke.

■ When reinstatement is unavailable, the Court may consider an award of front pay in its discretion. *Duke*, 928 F.2d at 1424. Because front pay can result in an unfair windfall for the plaintiff, it must be granted sparingly. *Id.* The Court may award front pay to "bridge a time when the court concludes the plaintiff is reasonably likely to obtain other employment." *Id.* The front pay award should "equal ... the present value of lost earnings ... between the date of judgment and the time when the employee can assume his new position." *White*, 564 F.2d at 1091 (quoting *Patterson*, 535 F.2d at 269).

■ The Fourth Circuit has not specifically enumerated a list of factors to consider in deciding to award front pay. Other courts have considered the plaintiff's prospects of obtaining comparable employment; the time period of the award; whether the plaintiff intended to work; and whether liquidated damages have been awarded. *E.g., Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1141 (7th Cir.1994). Because front pay necessarily involves speculation as to future events, the Court must judiciously scrutinize the record to determine whether future events are sufficiently predictable to justify such an award. *Williams v. Pharmacia Opthalmics, Inc.*, 926 F.Supp. 791, 796 (N.D.Ind.1996) (citing *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 729 (2d Cir. 1984)); *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1159 (6th Cir.1985).

■ The record contains no evidence suggesting a reasonable expected time for Plaintiff to obtain comparable employment. Further, although Rigidply apparently interfered with Plaintiff's ability to find comparable employment after his termination, Plaintiff has had at least one year, not including the time necessary for his surgery, to find comparable work. No liquidated damages have been awarded. However, Plaintiff has been actively looking for employment and is currently working, suggesting his desire to return to work. Under these circumstances, the Court finds Plaintiff should receive one year of front pay in the amount of $6400. This amount represents the approximate present value of the one-year differential between Plaintiff's salary at Rigidply and his current employment, and is a fair award

---

**5.** The Court notes that the award of back pay and interest is not subject to the statutory cap on Title VII damages contained in 42 U.S.C. § 1981a. *Id.* § 1981a(b)(2).

given the vague state of the record on this issue. Moreover, a one-year front pay award, combined with time available to Plaintiff before the jury entered its verdict, amounts to a two-year period for Plaintiff to seek reasonably comparable employment. Accordingly, the Court will award Plaintiff $6400 in front pay.

### III.

Based upon the foregoing analysis, the Court will grant Plaintiff's motion and award Plaintiff a total of $57,280.01 in back pay, interest, and front pay.

The Court has refrained from entering judgment on the jury's verdict pending the resolution of the back pay and front pay issues. Having resolved these issues, the Court will also enter judgment on the jury's verdict for Plaintiff in the amount of $15,000.

### ORDER

In accordance with the attached Memorandum, it is this 24th day of November 1997, by the United States District Court for the District of Maryland, ORDERED:

1. That Plaintiff's Motion for Back Pay, Interest, and Front Pay BE, and the same IS, hereby GRANTED; and

2. That judgment BE, and the same IS, hereby ENTERED in favor of Plaintiff in the amount of $72,280.01; and

3. That a copy of this Memorandum and Order be mailed to counsel for the parties.