Francisco GONZALEZ, Deidra E. Sanbourne, Paul B., Abby G., Curtis G., Roger G., Helen L., Larry M. and Mark W., By and Through their next friend, Peter L. Nimkoff; and the Advocacy Center for Persons With Disabilities, Inc., individually and on behalf of all others similarly situated, Plaintiffs,

v.

Bob MARTINEZ, in his official capacity as Governor, State of Florida; Gregory L. Coler, in his official capacity as Secretary of Florida Department of Health and Rehabilitative Services; David Sofferin, in his official capacity as Administrator, South Florida State Hospital; and R.J. Castellanos, in his official capacity as Acting Director of Division of Risk Management, State of Florida, Defendants.

No. 89–6283–CIV.

United States District Court, S.D. Florida.

Jan. 18, 1991.

Alice K. Nelson and Jodi Siegel, Southern Legal Counsel, Inc., Gainsville, Fla., Deborah Whisnant, The Advocacy Center for Persons With Disabilities, Inc., Tallahassee, Fla., for plaintiffs.

Charles A. Finkel, Dept. of Legal Affairs, Tallahassee, Fla., Howard M. Talen-

feld, North Miami, Fla., for defendants Martinez, Coler, Sofferin.

Peter D. Ostreich, Office of Treas., Dept. of Ins., Tallahassee, Fla., for defendant Castellanos.

## ORDER

NESBITT, District Judge.

This case presents the novel question of the extent to which Plaintiff Advocacy Center for Persons With Disabilities, Inc. must exhaust available administrative remedies pursuant to the Protection and Advocacy for Mentally Ill Individuals Act of 1986, 42 U.S.C. § 10801, *et seq.*, before filing a complaint in federal court alleging civil rights violations on behalf of institutionalized individuals who are mentally ill.

### Background

This class action[1] is brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, and § 504 of the Rehabilitation Act of 1974, as amended, 29 U.S.C. § 794, on behalf of all current and future residents of South Florida State Hospital ("SFSH"), an institution for the mentally ill. SFSH is administered by the State of Florida by the Florida Department of Health and Rehabilitative Services ("HRS"). The individual plaintiffs are residents of SFSH, and Plaintiff Advocacy Center for Persons With Disabilities, Inc. ("Advocacy Center") is a nonprofit corporation designated, pursuant to 42 U.S.C. § 10801, *et seq.*, to advocate and protect the rights of the mentally ill. Defendants are the Governor of the State of Florida, the Secretary of HRS, the Administrator of SFSH, and the Acting Director of the Division of Risk Management for the State of Florida.

The complaint alleges that the individual plaintiffs do not receive minimally adequate care at SFSH. Plaintiffs believe that persons confined to SFSH receive neither therapy for their illnesses nor training that would enable them to live independently in the community subsequent to their release. Plaintiffs further allege that the conditions at SFSH are physically and emotionally debilitating, causing the deterioration rather than the rehabilitation of the patients placed there. Specifically, Plaintiffs complain of a complete lack at SFSH both of privacy and of control over the most basic and routine aspects of life. Examples of such abuses include routine group nakedness and a failure to provide personal clothing for patients, instead of ill-fitting, soiled "communal" clothing, which the staff distributes on a daily basis. In addition, the complaint alleges that the condition of the physical plant is intolerable, the dental care inadequate, and the staff abusive, among other things. Plaintiffs claim that this mistreatment of the residents of SFSH amounts to a violation of their constitutional rights under the first, fourth, ninth and fourteenth amendments.

Conditions at the hospital were documented in a report dated September 1988, entitled, "Services at South Florida State Hospital: A Consumer–Focused Review with Recommendations." Advocacy Center sponsored the study, which was conducted by a private firm specializing in service evaluation and policy analysis for persons with disabilities. The review of SFSH took place on August 6–10, 1988. At the conclusion of the review period, Ms. Susan Curran, Program Director for Advocacy Center, conducted an exit interview with the hospital administrator and several members of her staff. The interview lasted for several hours, during which Ms. Curran and others presented their concerns about the conditions at SFSH.

On September 6, 1988, Ms. Curran wrote the hospital administrator regarding the health and safety of five specific individuals reviewed. The administrator responded on September 14, 1988. Ms. Curran, however, found the responses inadequate. On October 5, 1988, an advance copy of the report on SFSH, which was released to the press on October 6, 1988, and a letter from Mr. Jonathan P. Rossman, Executive Director of the Advocacy Center, demanding immediate improvements in the care provided by SFSH, were hand delivered to Dr. Ivor Groves, Assistant Secretary for the

---

1. The class has not yet been certified by this Court.

Alcohol, Drug Abuse and Mental Health Program ("ADM") of HRS. Dr. Groves did not reply. Therefore, on November 10, 1988, Mr. Rossman again wrote Dr. Groves regarding the substandard conditions at SFSH. This second letter was not answered until December 22, 1988.

On November 30, 1988, Ms. Curran visited SFSH to follow up on her previous review of the institution. She found conditions unchanged and expressed her continuing concerns at an exit interview with the acting administrator for SFSH. On December 1, 1988, Advocacy Center's Board of Directors held a regularly scheduled quarterly meeting. Ms. Curran reported on conditions at SFSH, and Mr. Rossman informed the board that SFSH failed to respond to Advocacy Center's inquiries and report. After agreeing that administrative remedies would not alleviate the deficiencies at SFSH, the board unanimously authorized filing a class action in federal court.[2] Mr. Rossman's sworn statement about the reasons Advocacy Center determined that litigation was appropriate is vague, however.[3]

On December 22, 1988, Mr. Rossman received two letter from Dr. Groves, responding to his previous letters and requesting that Advocacy Center inform him "when it would be convenient for you to discuss our response to all of the issues you raised to HRS." Included with Dr. Groves's December 22, 1988 letter was a HRS report on SFSH which made detailed recommendations for remedial action in many areas in which the September 1988 report had noted deficiencies. Mr. Rossman met with Dr. Groves twice in the month of March 1989 to discuss Advocacy Center's pending report regarding another hospital, but they did not discuss SFSH at either of these meetings. Ms. Curran again visited SFSH

on March 6–7, 1989, and again wrote the acting administrator about her concerns with the level of care provided by SFSH. The letter notes that maintenance of the facility was improved, but that Advocacy Center continued to believe that problems with basic care, treatment, and safety of the residents existed. SFSH did not respond to this letter immediately. Advocacy Center then filed the complaint in this lawsuit on April 10, 1989.

### Analysis

Defendants Martinez, Coler and Sofferin move for summary judgement pursuant to Federal Rule of Civil Procedure 56(c) on the grounds that Plaintiffs have failed to exhaust their administrative remedies.[4] Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted only if "there is no genuine issue as to any material fact and [if] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Thus, the question presented to the Court is twofold. First, the Court must determine which administrative remedies Plaintiffs must exhaust before filing a § 1983 action in federal court, and second, the Court must determine whether the uncontroverted evidence indicates that Plaintiffs have done so. In *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), the Supreme Court settled whether exhaustion of administrative remedies is required in § 1983 actions. The Court clearly held that as a general rule plaintiffs need not exhaust administrative remedies. 102 S.Ct. at 2567. Nevertheless, although *Patsy* strongly disfavors exceptions to the no-exhaustion rule, the courts must recognize exceptions explicitly or implicitly created by Congress. *Alacare, Inc.–North v. Baggiano*, 785 F.2d 963, 965–967 (11th Cir.

---

**2.** Pursuant to Advocacy Center's by-laws, participation in any litigation must have the approval of the Board of Directors.

**3.** Mr. Rossman's sworn testimony concerning whether Advocacy Center determined that the administrative remedies available to them would take an inordinate amount of time is quite vague. *See* paragraphs 25–29 of the Rossman Affidavit. Given the importance of this

fact at this stage of the proceedings, the Court declines to interpret Mr. Rossman's ambiguous statements as a declaration that Advocacy Center determined that the issues could not be resolved within a reasonable time.

**4.** Contrary to Plaintiffs' contention, Defendants have not waived the exhaustion defense, which was raised in the answer to the complaint.

1986), *cert. denied,* 479 U.S. 829, 107 S.Ct. 111, 93 L.Ed.2d 59 (1986).

In the Protection and Advocacy for Mentally Ill Individuals Act of 1986 ("the Act"), 42 U.S.C. § 10801, *et seq.,* pursuant to which Plaintiff Advocacy Center is designated to protect the rights of the mentally ill, Congress explicitly addressed the issue of exhaustion in 42 U.S.C. § 10807. Section 10807 provides in relevant part that

(a) Prior to instituting any legal action in a Federal or State court on behalf of a mentally ill individual, an eligible system [Advocacy Center], ..., *shall exhaust in a timely manner all administrative remedies where appropriate.* If, in pursuing administrative remedies, the system ... determines that any matter with respect to such individual will not be resolved within a reasonable time, the system ... may pursue alternative remedies, including the initiation of legal action.

(b) Subsection (a) of this section does not apply to any legal action instituted to prevent or eliminate imminent serious harm to a mentally ill individual.

(emphasis added).

Neither Defendants nor Plaintiffs cite any case law interpreting the above statute, and the Court's independent research fails to reveal any relevant authority. Thus, the meaning of § 10807 of the Act appears to be a matter of first impression.

Interpretation of a statute begins with the relevant language. *Mallard v. U.S. Dist. Court For Southern Dist. of Iowa,* 490 U.S. 296, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989). In this case, the critical phrase is *"shall* exhaust ... all administrative remedies *where appropriate."* Unfortunately, this language lacks a plain meaning. The statute fails to define the circumstances in which it is appropriate to exhaust administrative remedies. The Court therefore must turn to the legislative history of the Act: "[i]n construing a statute in a case of first impression we look first to the language of the statute itself, and second to the statute's legislative history." *U.S. v. Dadanian,* 818 F.2d 1443,

1448 (9th Cir.1987), *modified on rehearing,* 856 F.2d 1391 (9th Cir.1988).

The legislative history of § 10807 is relatively brief, and therefore, the Court will reproduce it almost in its entirety. The Senate Report states that

Prior to instituting any legal action in a Federal or State court on behalf of a mentally ill person, it is the Committee's intention that the eligible systems or programs under subcontract with them should exhaust all administrative remedies where appropriate. It is the further intention of the Committee that the exhaustion of administrative remedies be accomplished in a timely manner.

*It is the belief of the Committee that conciliation, negotiation, mediation and other administrative procedures can work effectively in providing protection and advocacy of the mentally ill, especially because litigation in most instances is costly and time consuming.* The Committee recognizes the experience of the DDP & A [Developmentally Disabled Protection & Advocacy] System in implementing such negotiation and mediation on behalf of persons with disabilities, as well as the system's use of other administrative remedies in lieu of litigation. The Committee further notes that only 5 percent of DDP & A cases in 1984 have resulted in court action. The Committee intends that the DDP & A System in its new role as the eligible protection and *advocacy system for mentally ill persons under this Act should continue the non-litigative approach to advocacy and dispute resolution and urges the continued use of administrative and alternative remedies prior to the initiation of a legal action.*

It is not the intention of the Committee that the administrative remedies must be pursued for an unreasonable duration, but rather that whenever possible there should be timely and reasonable attempts made to mediate and negotiate appropriate administrative remedies. If the pursuit of administrative remedies has not solved any matter within a reasonable time, the eligible system may pursue al-

ternative remedies, including the initiation of a legal action. The Committee recommends that a 3–day notification be given to the appropriate parties prior to filing such an action. However, legal remedies may be instituted immediately in order to eliminate or prevent imminent serious harm to a mentally ill client.

Finally, the Committee does not intend that the administrative remedies which clients may pursue should affect their rights otherwise existing under Federal and State law to full judicial consideration of their claims on all matters of fact and law.

S.Rep. No. 109, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.Code Cong. & Admin. News 1361, 1371 (emphasis added).

The House Conference Report adds little to the Senate Report. It provides in relevant part that

The conferees intend that administrative remedies be exhausted before legal action is initiated. The conferees recognize, however, that exhaustion of administrative remedies may delay action on behalf of mentally ill individuals and have authorized the system to proceed with legal action when unreasonable delays exist. *If legal action is initiated, courts retain their prerogative to determine that the issues are not ripe and to remand the matter for further administrative consideration.*

H.R.Conf.Rep. No. 576, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.Code Cong. & Admin.News 1377, 1382–83 (emphasis added).

■ Defendants contend that the legislative history of the § 10807 indicates that Plaintiffs must exhaust *all* administrative remedies, formal and informal, including mediation, conciliation, and negotiation, before filing suit in the district court. Spe-

cific formal administrative remedies cited by Defendants include: 1) filing grievances with the hospital or HRS on behalf of patients in accordance with HRS regulations, Fla.Admin.Code R. 10E–5.061; 2) reporting abuse pursuant to the Florida Adult Protective Services Act, Fla.Stat. § 415.101, *et seq.;* and 3) raising the deficiencies in the periodic Baker Act hearings held pursuant to Fla.Stat. § 394.467.[5]

Plaintiffs argue that none of the specific remedies cited by Defendants are adequate to provide relief for the type of egregious, systemic abuse that Advocacy Center alleges. The Court agrees that these remedies are clearly inadequate in terms of the traditional exhaustion doctrine. *See, e.g., Patsy v. Florida Int'l Univ.,* 634 F.2d 900 (5th Cir.1981) (rehearing *en banc*), *rev'd on other grounds,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Shinholster v. Graham,* 527 F.Supp. 1318 (N.D.Fla.1981) (holding Florida Administrative Procedure Act and abuse reporting system inadequate remedies). *Patsy* lists the five necessary aspects of an "adequate and appropriate" administrative remedy:

*First,* an orderly system of review or appeal must be provided by statute or written agency rule. *Second,* the agency must be able to grant relief more or less commensurate with the claim. *Third,* relief must be available within a reasonable period of time. *Fourth,* the procedure must be fair, and not unduly burdensome, and must not be used to harass or otherwise discourage those with legitimate claims. *Fifth,* interim relief must be available, in appropriate cases, to prevent irreparable injury and to preserve the litigant's rights under § 1983 until the administrative process has been concluded.

---

**5.** In their reply brief, Defendants argue for the first time that Plaintiffs could have demanded an administrative hearing before a hearing officer provided by the Division of Administrative Hearings under Fla.Stat. § 120.57. By Order dated January 7, 1991, the Court struck references to § 120.57, in accordance with Local Rule 10.C. Regardless of the Court's Order of January 7, 1991, the Court's analysis of the

exhaustion issue remains the same, because the § 120.57 hearing officer lacks jurisdiction to hear Plaintiffs' constitutional claims. *See Long v. Dept. of Admin., Div. of Retirement,* 428 So.2d 688, 692–693 (Fla. DCA 5th 1983). Thus, like the other administrative remedies cited by Defendants, a § 120.57 hearing would be inadequate to remedy Plaintiffs' claims.

634 F.2d at 912–13.

In this case, the cited remedies fail to meet both of the first two prongs of the test.

Defendants do not seriously contend that these remedies would survive the traditional test for adequacy. They argue, however, that this Court's analysis should not be confined to whether the cited remedies would prove adequate under the traditional judicially-created exhaustion doctrine, because the legislative history indicates that Congress intended that *all* administrative remedies should be exhausted prior to instituting suit.

■ The Senate Report, *supra*, unquestionably expresses a preference for informal remedies over litigation as a means of solving the problems of mentally ill individuals. Nevertheless, viewed as a whole, the legislative history does not indicate that the Advocacy Center must attempt every conceivable measure before instituting litigation. Rather, the Senate Report states that Advocacy Center "should continue the non-litigative approach to advocacy and dispute resolution and urges the continued use of administrative and alternative remedies prior to the initiation of a legal action." S.Rep. No. 109, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.Code Cong. & Admin.News 1361, 1371.

■ The legislature obviously intended that advocacy systems retain some flexibility in determining which informal—or inadequate—administrative remedies to pursue. Thus, whether Advocacy Center has exhausted all appropriate administrative remedies can only be determined on a case by case basis. The legislative history supports giving the courts substantial discretion regarding exhaustion by eligible systems such as Advocacy Center: the House Conference Report states that "[i]f legal action is initiated, courts retain their prerogative to determine that the issues are not ripe and to remand the matter for further administrative consideration." H.R.Conf.Rep. No. 576, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.Code Cong. & Admin.News 1377, 1382–83.

■ In this case, Plaintiffs have presented little evidence that they took adequate measures to resolve this case extra-judicially. As noted *supra*, Mr. Rossman's testimony about the reasons Advocacy Center decided not to pursue litigation is vague. Moreover, it is unclear to the Court why neither Advocacy Center nor HRS pursued the possibility of negotiation which was raised in the December 22, 1988 letter. Nevertheless, to grant Defendants summary judgment at this stage of the proceedings based on failure to exhaust would be a clear error as summary judgment is reserved for decisions on the merits of litigants' claims. *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir. Unit B 1981). Accordingly, it is

ORDERED and ADJUDGED that Defendant's motion for summary judgement on the issue of failure to exhaust administrative remedies is DENIED without prejudice. Defendants may renew their motion after they have pursued, for a period of ninety (90) days, timely and reasonable attempts to negotiate appropriate remedies.

This ruling is consistent with the House Conference report which provides that the courts shall retain "their prerogative to determine that the issues are not ripe and to remand the matter for further administrative consideration." Accordingly, discovery and all further proceedings as to all issues other than exhaustion of alternative remedies are STAYED pending a determination by the Court that the matter is ripe for judicial action.

DONE AND ORDERED.